# Exhibit A

# Superior Court of the District of Columbia

## CIVIL DIVISION- CIVIL ACTIONS BRANCH
## INFORMATION SHEET

**2022-CAB-005171**

District of Columbia                    Case Number: _____

vs                    Date: _November 10, 2022_

Pro-Football, Inc. d/b/a Washington Commanders, et al.

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*  Jessica E. Feinberg | Relationship to Lawsuit |
| Firm Name:  Office of the Attorney General for the District of Columbia | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:  202-735-6637                   1779644 | ☐ Self (Pro Se) ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury      ☐ 6 Person Jury      ☒ 12 Person Jury

Demand: $ ___Unspecified___                    Other: _____

**PENDING CASE(S) RELATED TO THE ACTION BEING FILED**

Case No.:_____      Judge: _____      Calendar #:_____

Case No.:_____      Judge: _____      Calendar#:_____

---

**NATURE OF SUIT:**      *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract          ☐ 14 Under $25,000 Pltf. Grants Consent    ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty          ☐ 17 OVER $25,000 Pltf. Grants Consent     ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument       ☐ 27 Insurance/Subrogation                  ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                 Over $25,000 Pltf. Grants Consent          Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation                  ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees            Under $25,000 Pltf. Grants Consent         Under $25,000 Consent Denied
                                 ☐ 28 Motion to Confirm Arbitration
                                       Award (Collection Cases Only)

---

**B. PROPERTY TORTS**

☐ 01 Automobile          ☐ 03 Destruction of Private Property    ☐ 05 Trespass
☐ 02 Conversion          ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process             ☐ 10 Invasion of Privacy              ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection      ☐ 11 Libel and Slander                      Not Malpractice)
☐ 03 Assault and Battery          ☐ 12 Malicious Interference           ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury  ☐ 13 Malicious Prosecution            ☐ 19 Wrongful Eviction
☒ 05 Deceit (Misrepresentation)   ☐ 14 Malpractice Legal                ☐ 20 Friendly Suit
☐ 06 False Accusation             ☐ 15 Malpractice Medical (Including Wrongful Death)  ☐ 21 Asbestos
☐ 07 False Arrest                 ☐ 16 Negligence- (Not Automobile,     ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                              Not Malpractice)                 ☐ 23 Tobacco
                                                                        ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D. REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_Jessica Feinberg_
_____
Attorney's Signature

11/10/22
_____
Date

CV-496/ June 2015

eFiled
11/10/2022 10:55:46 AM
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

**DISTRICT OF COLUMBIA,**
a municipal corporation,
400 6th Street, N.W.
Washington, D.C. 20001,

       Plaintiff,

   v.

**PRO-FOOTBALL INC d/b/a**
**WASHINGTON COMMANDERS,**

Serve On:
CSC-Lawyers Incorporating Service
Company,
7 St. Paul Street, Suite 820
Baltimore, M.D. 21202,

**DANIEL SNYDER,**

Serve On:
7979 E Boulevard Drive
Alexandria, V.A. 22308,

**THE NATIONAL FOOTBALL LEAGUE,**

Serve On:
The National Football League
345 Park Avenue
New York, N.Y. 10154

and

**ROGER GOODELL,**

Serve On:
280 Park Ave, Fl 12W
New York, N.Y. 10017

      Defendants.

Case No.:  **2022-CAB-005171**

**COMPLAINT**

**JURY DEMAND**

# TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................. 3

**JURISDICTION** .............................................................................................................. 6

**PARTIES** ......................................................................................................................... 6

**FACTS** ............................................................................................................................. 8

   I.  THE COMMANDERS TARGET DISTRICT CONSUMERS AS ITS CORE
      CONSUMER BASE..................................................................................................... 8

     A.  The Team Closely Identifies with the District. ............................................... 8

     B.  The Team Extensively Markets to District Consumers. ................................. 9

   II.  TO PRESERVE FAN SUPPORT, SNYDER AND THE TEAM FALSELY
       DENIED KNOWLEDGE OF A TOXIC WORKPLACE RIFE WITH
       SEXUAL HARASSMENT. ........................................................................................ 11

     A.  Snyder Fostered a Culture That Glorified Sexual Harassment and Discouraged
        Reporting........................................................................................................ 11

     B.  The Team's Toxic Culture Was Epitomized by Its Cheerleading Program. ............. 15

     C.  Snyder Denied Personal and Team Management's Knowledge of Extensive Sexual
        Misconduct at the Team, Despite His Direction and Participation in Much of the
        Wrongdoing and Specific Complaints Raised to Leadership. .................................... 16

  III.  DEFENDANTS LAUNCHED AN INVESTIGATION AND PROMISED THEIR
        FULL COOPERATION SO FANS COULD TRUST THE RESULT, WHILE
        PRIVATELY WORKING TO THWART THAT GOAL. ........................................ 17

     A.  The Team And League Responded To Consumer Concern By Launching An
        Investigation................................................................................................... 18

     B.  Defendants Worked Behind The Scenes To Undermine the Promise of an Unbiased
        and Thorough Investigation. ......................................................................... 22

        1.  The NFL and the Team Entered into a Secret Agreement. .................................. 22

        2.  The NFL Allowed Snyder to Attempt to Interfere in the Investigation. .............. 23

        3.  The League and Team Worked Together to Block the Public's Knowledge of
           Wilkinson's Findings. ............................................................................ 28

        4.  Defendants' Actions Contradict Their Public Statements and Undermine
           Consumers' Confidence in the Investigation's Outcome. .................................... 31

  IV.  DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS ARE MATERIAL TO
        DISTRICT CONSUMERS, WHO CARE DEEPLY ABOUT THE TEAM. ................... 32

**CAUSES OF ACTION** ................................................................................................ 35

**PRAYER FOR RELIEF** ............................................................................................. 37

**JURY DEMAND** .......................................................................................................... 38

**APPENDIX** .................................................................................................................... 39

Plaintiff the District of Columbia (the District) brings this action against Pro-Football, Inc. d/b/a the Washington Commanders (the Team), Team owner Daniel Snyder, the National Football League (the NFL or the League), and NFL Commissioner Roger Goodell (collectively, Defendants) for public misrepresentations, omissions, and ambiguities of material fact, all of which violate the District of Columbia Consumer Protection Procedures Act (CPPA), D.C. Code §§ 28-3901, *et seq.* In support of its claims, the District states as follows:

## INTRODUCTION

1.       In order to sell expensive tickets and merchandise and maintain the Team as a profitable part of the League, Defendants need the Team to inspire public confidence and fan loyalty. But Defendants repeatedly attempted to bolster such confidence and loyalty through artful deception to the detriment of District consumers.

2.       Faced with public outrage over detailed and widespread allegations of sexual misconduct and a persistently hostile work environment at the Team, Defendants made a series of public statements to convince District consumers that this dysfunctional and misogynistic conduct was limited and that they were fully cooperating with an independent investigation. These statements were false and calculated to mislead consumers so they would continue to support the Team financially without thinking that they were supporting such misconduct.

3.       In summer of 2020, public reporting on decades of sexual harassment, verbal abuse, and pervasive toxicity at the Team threatened the Team's image and generated consumer outrage. The reports revealed a severely broken culture—created and encouraged by long-time owner Dan Snyder—in which women were openly objectified, and fear and intimidation reigned. The Team knew its fans would not continue to financially support businesses that knowingly tolerated this

misconduct. Snyder thus denied that he or Team management had any knowledge of the misconduct to reassure consumers, but these denials were false.

4.     To continue rebuilding public confidence, the Team and the NFL quickly sought to allay consumers' concerns by launching an independent investigation and promising full cooperation so the results would be unbiased.

5.     The Team hired a well-known attorney, Beth Wilkinson, to conduct an "independent third-party investigation into allegations about [the Team's] culture and incidents of harassment." Snyder stated publicly that Wilkinson was "empowered to do a full, unbiased investigation and make any and all requisite recommendations."

6.     As allegations continued to surface against Snyder and the Team, the NFL (via Commissioner Goodell) initially supported the Team's continued oversight of the Wilkinson Investigation and vowed to "ensure that the club and its employees satisfy their obligation to *give full cooperation* to investigators" (emphasis added). But fans were vocal, and they did not trust the Team to oversee an investigation into itself. The NFL then assumed control of the investigation and Snyder promised this move was "so that the results are thorough, complete and trusted by the fans, the players, our employees and the public."

7.     Those statements outwardly projected a commitment by Defendants to conduct an unbiased investigation into the misconduct at the Team that would have the full cooperation of leadership, would restore public trust, and would reassure District consumers that their home team was a safe environment that they could continue to support.

8.     Despite their public proclamations promising to uphold the integrity of the investigation, Defendants actively worked to thwart the investigation and suppress its results. Days after assuming control of the investigation to ensure it was independent of the Team, the League

entered into an agreement with the Team that guaranteed Snyder the authority to block the public release of any information coming out of the investigation.

9.      Meanwhile, Snyder and the Team launched a campaign to interfere with and obstruct the investigation. Snyder and the Team attempted to prevent witnesses from talking to Wilkinson through payoffs and intimidation and engaged in aggressive, abusive litigation to dig up information on victims and the journalists who reported on Defendants' misconduct. The NFL was fully aware of this intimidation campaign. The course of Defendants' conduct suggests the NFL was never serious about overseeing a thorough and complete investigation into Snyder and the Team's misconduct. As the investigation progressed, the NFL received routine updates from Wilkinson's investigators. Weeks after Goodell was first personally briefed by Wilkinson, during the heart of the investigation into Snyder's pervasive misconduct, the NFL approved a waiver of League rules to let Snyder buy out three minority owners and gain 100% ownership control of the Team. Finally, the NFL refused to release Wilkinson's detailed findings after a lengthy investigation (an arrangement negotiated directly with Snyder).

10.     District consumers reasonably understood from all the Defendants' public statements that a full, independent investigation would help restore their confidence in the Team. Instead, consumers got false promises and a cover-up that allowed the Team's malfeasance to remain in the shadows.

11.     This consumer protection action seeks accountability from the Washington Commanders, Snyder, the NFL, and Commissioner Goodell for public statements, ambiguities, and omissions that tended to mislead District consumers in the form of injunctive relief, civil penalties, and restitution.

**JURISDICTION**

12.     This Court has subject matter jurisdiction over the claims and allegations in the

Complaint. *See* D.C. Code § 11-921(a).

13.     This Court has personal jurisdiction over Defendants pursuant to D.C. Code § 13-

423.

**PARTIES**

14.     Plaintiff District of Columbia, a municipal corporation, is the local government for

the territory constituting the permanent seat of the government of the United States. The District

is represented by and through its chief legal officer, the Attorney General for the District of

Columbia. The Attorney General conducts the District's legal business and is responsible for

upholding the public interest. D.C. Code § 1-301.81(a)(1). The Attorney General is expressly

authorized to enforce the District's consumer protection laws, including the Consumer Protection

Procedures Act. *See* D.C. Code § 28-3909.

15.     Pro-Football, Inc. is the corporate entity that owns the Washington Football Team.

As of 2020, the Team is known as and does business as the Washington Commanders. Pro-

Football, Inc. is incorporated in Maryland and has its principal office in Baltimore. The

Washington Football Team is one of 32 separately owned and independently operated professional

football teams that make up the National Football League. In the regular course of business, the

Team sells tickets, merchandise, and other consumer products to District residents.

16.     Daniel Snyder is an individual who resides in Virginia and is the majority owner of

the Washington Commanders. Snyder purchased and became majority owner of the Team in 1999.

In 2021, with the benefit of a debt-waiver approved by the NFL, he purchased the shares of

multiple minority owners, consolidating 100% of the Team's ownership in himself, his mother,

and his sister. Snyder was the sole chief executive officer (CEO) of the Team from his initial purchase until June 2021, at which time his wife, Tanya Snyder, became co-CEO. At all times material to this Complaint, acting alone or in concert with others, Snyder formulated, directed, controlled, had the authority to control, participated in, or with knowledge approved of the acts or practices of the Washington Commanders, including the acts and practices set forth in this Complaint.

17.    Defendant National Football League (NFL or the League) is an unincorporated trade association that consists of 32 separately owned and independently operated professional football teams. The NFL, directly and through subsidiaries, is engaged in interstate commerce in the business of, among other things, promoting, operating, organizing, and regulating the major professional football league in the United States, including in the District of Columbia. The National Football League directs its business to the District by advertising in the District, selling tickets to District residents, and otherwise cultivates and exploits its business in the District by specifically targeting District consumers for commercial gain.

18.    Defendant Roger Goodell has been the Commissioner of the National Football League since 2006. At all times material to this Complaint, acting alone or in concert with others, Goodell formulated, directed, controlled, had the authority to control, participated in, or with knowledge approved of the acts or practices of the National Football League, including the acts and practices set forth in this Complaint.

## FACTS

I.  **THE COMMANDERS TARGET DISTRICT CONSUMERS AS ITS CORE CONSUMER BASE.**

   **A. The Team Closely Identifies with the District.**

19.     The NFL and the Commanders (then called the Washington Redskins) won the hearts of District sports fans through decades of success that included three Super Bowl victories in 1983, 1988, and 1992. The Team has been a mainstay of District life for more than eighty years.

20.     The Team's connection to the District began in 1937, when George Preston Marshall, then-owner of the NFL Boston Redskins, moved the team to the District, and renamed the team the Washington Redskins. From 1937 to 1961, the Team played at Griffith Stadium, a 20,000-seat stadium located in the Shaw neighborhood of the District.

21.     In 1961, the Team entered into a 30-year lease to play its games at the Robert F. Kennedy Memorial Stadium (RFK), a 50,000-seat stadium in Northeast Washington, D.C.

22.     The Team continued to play at RFK until its lease expired in 1996, at which time the Team began playing its home games in a new stadium in Landover, Maryland.

23.     Snyder purchased a majority stake in the Team and its Maryland stadium in 1999 for $800 million. Later that year, Snyder sold the naming rights for the stadium and renamed it FedEx Field, which remains the Commanders' home stadium.

24.     In 2021, Snyder bought out the three primary minority owners of the Team, consolidating 100% of the Team's ownership in his family.

25.     With a nearly 100% personal ownership interest in the Team, Snyder has significant incentives to increase consumer interest and confidence in the Team to maintain the financial success of the Team and his significant wealth.

**B.  The Team Extensively Markets to District Consumers.**

26.     Despite now playing in Maryland, the Team continues to treat the District as its home. The *Washington* Commanders and the NFL have specifically targeted District consumers for decades, and they continue to direct their branding, marketing, and sales efforts to attract the business of District consumers.

27.     For decades, the Commanders have broadcast games over television and radio stations that dominate District airwaves.

28.     The Team has also specifically courted District consumers by targeting philanthropy in the District, such as providing grants to District schools, providing scholarships to students at universities in the District, and otherwise supporting D.C. charities, low-income District residents, District sports teams and coaches, and District schools.

29.     The NFL's bylaws divide and assign markets to each of its franchise teams. Since its creation, the Washington Football Team has maintained a "home city" of Washington, D.C. and controlled the entire District market.

30.     This long-standing connection was further highlighted by the Team's name change to the Commanders, as the Team emphasized that it chose the name because it "represents the nation's capital."

31.     In the Team's rebranding, the Commanders have also emphasized its connection with the District through the lettering on its logo, displaying the District flag on its uniform, and using the prominent letter W for Washington on their helmets.



32.     The Team noted that the inclusion of the D.C. flag "stands as a symbol that honors and celebrates the DC community."

33.     The Team recently unveiled new official jackets that include a large "D.C." insignia on one side of the chest and abbreviations for all four quadrants of the District on the other.



34.     The Commanders continue to target District consumers in its marketing and sales efforts, such as promoting the purchase of team apparel, ticket sales, and the rental of executive suites, including by sending direct mailers to District residents.

## II.     TO PRESERVE FAN SUPPORT, SNYDER AND THE TEAM FALSELY DENIED KNOWLEDGE OF A TOXIC WORKPLACE RIFE WITH SEXUAL HARASSMENT.

35.     In 2020, reporting of a hostile workplace cratered consumer confidence in the Team and its ownership, leading many District fans to consider withdrawing financial support—thus threatening Defendants' profits. Snyder falsely represented to consumers that he and the Team's leadership lacked knowledge of the allegations contained in the report in an effort to maintain fan support.

### A.  Snyder Fostered a Culture That Glorified Sexual Harassment and Discouraged Reporting.

36.     For decades, Snyder has cultivated an environment within the Team that glorifies sexual harassment and punishes victims for speaking out.

37.     Employees say the workplace was "like the mafia," in which Snyder and prominent executives regularly used bullying and vulgar language when talking to subordinates, creating a culture of fear and paranoia.

38.     Cheerleaders and female employees were exploited and harassed. Some male employees were bullied into participating in this hyper-masculine culture for fear of losing their jobs. There was no functional human resources department or reliable mechanism for employees to report harassment and bullying.

39.     The toxic culture, created and condoned by Snyder, permeated every corner of the Team, leaving no safe avenue to get help. The misconduct did not just go to the top; it originated there.

40.     A former executive who worked at the team for 24 years stated that employees referred to Snyder as the "Chief Harassing Officer."

41.     As one example of Snyder's direct harassment of employees, Snyder bullied male employees and questioned their sexual orientation when they did not conform to Snyder's perception of manhood.

42.     Snyder himself has been accused of sexually harassing female employees. One former female employee claimed that Snyder sexually harassed and assaulted her in April 2009, and her case was subsequently settled just a couple of months later.

43.     Another former Team cheerleader alleges that Snyder propositioned her to have sex with his friend at a 2004 party. At the time of the incident, the cheerleader reported Snyder's misconduct to the Team's cheerleader director and to the marketing director for the cheerleading squad. In turn, she was merely advised to avoid Snyder for the rest of the night. Because Snyder owned the Team, she did not feel there was anything more she could do about his comment, and she did not publicly report it until 2020.

44.     In further cultivating the Team's culture of sexual harassment, Snyder often brought women believed to be sex workers to work-related events, which in turn made Team employees feel uncomfortable.

45.     One such event occurred at Snyder's vacation home in Aspen, Colorado, in 2005 or 2006. After entertaining several employees at a nightclub, Snyder brought them back to his vacation home, and the female employees were escorted to the basement for the rest of the night

while the male employees remained upstairs. At one point, Snyder came downstairs wearing only a bathrobe and offered the women champagne. That same night, one female employee went upstairs and saw a nude woman giving a massage to a male Team executive and saw another woman wearing only a bathrobe exiting Snyder's bedroom. The female employees did not know these women and believed they were sex workers. Because they had traveled on Snyder's plane out of state, despite their discomfort with the executives' behavior, these female employees felt trapped.

46.     In another incident in which a Team executive traveled with Snyder on his private plane, Snyder informed the executive that he had girls "lined up," including one for the executive. When they arrived at the hotel, there were a number of women in the suite whom the executive had never met. Given that Snyder had flown the women in from another state, and that these women were physically affectionate with Snyder and the male employees Snyder had brought with him, the executive believed that the women were sex workers, which made him feel deeply uncomfortable. Again, having traveled privately with Snyder, he felt captive.

47.     Snyder's personal involvement in harassing employees created a culture in which the Team's other powerful men were permitted to do the same. As a result, executives and other employees routinely sexually harassed and objectified female employees and the Team's cheerleaders, and they faced no recourse from Snyder when he was made aware of their misconduct.

48.     At least one such report of sexual harassment was emailed to Snyder and other executives directly by a female chef. She detailed an incident in which the Team's head chef, after noticing the female chef had changed clothes by her locker, said in front of other staff, "I wish I knew, I would have followed you back there. Do you know the last time I had sex?" She

specifically noted she was scared to report the incident because the head chef bragged he was untouchable because Snyder had hired him.

49.     In another example, Larry Michael, the Team's long-time broadcaster and senior media executive, was accused of sexual misconduct by multiple people. Specifically, in 2018, the Team's President of Business Operations told Snyder that Michael sexually harassed a marketing and customer service employee by touching and kissing her and making unwanted comments about her appearance.

50.     Also in 2018, Michael was caught on a hot microphone during a broadcast of a game making inappropriate sexual remarks about an intern.

    a.   Michael said, "I do think our intern is looking better every day. I do think our intern is . . . little blonde there talking to Aces . . . she's looking pretty good there."

    b.   Second individual: "That's a hell of an outfit."

    c.   Michael: "I don't know what the fuck's going on there."

51.     In response, Snyder dismissed the allegations and said Michael "was a sweetheart" and "wouldn't hurt anybody." Michael remained at the Team until 2020, when the *Washington Post* publicized his misconduct.

52.     In another episode, Snyder was informed of sexual misconduct between a player and two cheerleaders. In response, Snyder placed the blame on the victims, directing the firing of the cheerleaders to "minimize distractions, temptations for players." There were no consequences for the player.

53.     Likewise, when Snyder was told that a member of the coaching staff groped an employee, Snyder refused to do anything about it. Instead, he directed that the victim should "stay away from the coach."

**B.  The Team's Toxic Culture Was Epitomized by Its Cheerleading Program.**

54.     After purchasing the Team, Snyder brought the cheerleading program in-house, under his supervision. Snyder exercised control over everything, from which cheerleading candidates made the cut, to which photos were used in the cheerleader calendar, to how revealing the cheerleading uniforms would be. He regularly told people to keep the cheerleaders "skinny with big tits."

55.     Snyder also revised the annual cheerleader calendar to be a swimsuit calendar. He required more photos of cheerleaders covering their bare chests with their arms and hands, photos of cheerleaders covered in only body paint, and photos of cheerleaders in lingerie.

56.     At Snyder's insistence, and over prior objections of some other executives, sponsors were invited to far-flung locations to observe these calendar photo shoots up close. This resulted in cheerleaders being ogled by unknown men and made to feel uncomfortable as a result. One cheerleader told the *New York Times* in 2018, at one of the shoots "we were basically standing around [another cheerleader] like a human barricade because she was basically naked, so we could keep the guys from seeing her . . . . I was getting so angry that the guys on the trip were skeezing around in the background."

57.     According to a leader of the cheerleading team, Team executives would sneak photographs of cheerleaders in compromising situations during the shoot and send the pictures to Snyder.

58.     When the calendar shoots were filmed, cameras were often kept continuously recording, despite cheerleaders' requests that certain portions not be filmed. Those videos often captured nudity, because the cheerleaders posed topless or nude, and the recordings captured the body painting process.

15

59.     This footage was often taken without the cheerleaders' awareness or consent.

60.     Afterwards, Snyder directed Team executives to have employees and contractors edit videos together using footage of the cheerleaders from the calendar shoots—including the footage the cheerleaders had specifically requested not be shot. Snyder mandated that these videos include the "good bits," which producers understood to mean unedited images of cheerleaders' exposed breasts and pubic areas.

61.     These voyeuristic videos were reportedly scored with Snyder's favorite songs and given directly to Snyder.

**C. Snyder Denied Personal and Team Management's Knowledge of Extensive Sexual Misconduct at the Team, Despite His Direction and Participation in Much of the Wrongdoing and Specific Complaints Raised to Leadership.**

62.     In a series of articles between July 16, 2020, and October 16, 2020, the *Washington Post* provided detailed reporting on allegations from more than a dozen women, including former cheerleaders and employees, of extensive and prolonged sexual harassment and verbal abuse while at the Team. The reporting also focused on the surreptitious footage taken from the cheerleader swimsuit calendar shoots, including the cheerleaders' reactions to learning how they had been exploited. Together, the three reports publicized the Team's misogynistic, dangerous workplace and Snyder's role in creating and promoting it.

63.     Upon reading these reports, District consumers were particularly horrified by Snyder's role in the alleged misconduct. Fans spoke out on public message boards, demonstrating their outrage at the allegations and Snyder's role specifically.

64.     Fans became concerned that by financially supporting the Team they were funding a toxic workplace and an owner that rewarded the mistreatment of its female staff.

65.     Snyder addressed the allegations against him by flatly—and falsely—denying he knew anything about the toxic workplace culture—a culture that, in fact, he had created and encouraged.

66.     Although Snyder had been informed numerous times over the years that Team staff and executives were engaging in sexual misconduct, Snyder claimed he was "unaware of these allegations until they surfaced in the media" and that his ignorance was because he had "admittedly been too hands-off as an owner and allowed others to have day-to-day control to the detriment" of the Team.

67.     He additionally denied specific parts of the reporting that personally implicated him. For example, in response to the allegation that Snyder propositioned a cheerleader to have sex with his friend, Snyder claimed she "never [brought] any of these allegations to management's attention" and she "did not report this alleged incident to anyone at the team in 2004." As described above, this is false, as she reported it to two different people at the time, including management.

68.     As to the lewd, non-consensual cheerleader videos he was alleged to have requested, Snyder claimed to "not have any knowledge of the ten-year old videos referenced in the story. I did not request their creation and I never saw them."

69.     These statements directly contradicted the extensive evidence detailed above of sexual harassment and a toxic workplace cultivated by Snyder himself.

III.    **DEFENDANTS LAUNCHED AN INVESTIGATION AND PROMISED THEIR FULL COOPERATION SO FANS COULD TRUST THE RESULT, WHILE PRIVATELY WORKING TO THWART THAT GOAL.**

70.     Defendants knew that allegations of sexual misconduct and a hostile workplace would alienate fans and threaten their profits, so the Team, the NFL, and their executives publicly launched an investigation into the allegations. The Team engaged a respected D.C. attorney—Beth

17

Wilkinson—to conduct an independent investigation, and later the NFL took over the investigation to give consumers confidence that it would be free from interference by Snyder and the Team.

71.     With the investigation under the NFL's control, Defendants' statements[1] gave District consumers the overwhelming impression that Snyder and the Team would fully cooperate with the investigation and that the public could trust the investigation's results because they would ensure it would be thorough and unbiased.

72.     But behind the scenes, Defendants engaged in a course of conduct that was directly contrary to their public statements. Among other things, the NFL entered into an agreement that functionally gave Snyder veto power over what parts of the investigation would be made public, allowed Snyder and the Team to wage a campaign to block Wilkinson from accessing witnesses and documents, and gave the public no full accounting of the investigation's results. Taken together, Defendants' actions reflect conduct contrary to what they had communicated to the public, undermining confidence in the results—confidence that Defendants assured would be restored by the investigation.

**A.  The Team And League Responded To Consumer Concern By Launching An Investigation.**

73.     On July 17, 2020, the day after the first of the three *Washington Post* articles, Snyder announced he and the Team had hired Beth Wilkinson of Wilkinson Walsh LLP[2] to conduct an internal investigation of the allegations (the Wilkinson Investigation). Snyder stated, "Beth Wilkinson and her firm are empowered to do a *full*, unbiased investigation and make any and all requisite recommendations" (emphasis added).

---

[1] A chronology of many of Defendants' misleading statements is included in the attached Appendix and incorporated herein by reference.
[2] Wilkinson Walsh LLP became Wilkinson Stekloff in November 2020.

74.     The NFL initially echoed Snyder's commitment and supported the Team's effort to investigate the allegations on its own: "Washington has engaged outside counsel to conduct a thorough investigation into these allegations. The club has pledged that it will give its *full cooperation* to the investigator and we expect the club and all employees to do so. We will meet with the attorneys upon the conclusion of their investigation and take any action based on the findings" (emphasis added).

75.     Weeks later, Defendants again tried to assure the public that they were taking the allegations seriously after the *Post* reported the additional allegations about the cheerleader videos and Snyder's own sexual misconduct.

76.     In response to the *Post* reporting, the Team declared it was "committed to investigating [the allegations] fully."

77.     The NFL and Goodell also doubled down, again supporting the Team's oversight of the investigation and promising they would "ensure that the club and its employees satisfy their obligation to give *full cooperation* to the investigators" (emphasis added).

78.     Despite Defendants' efforts to quell fans' concerns, some fans recognized that Snyder and the Team could not be trusted to investigate themselves, and any investigation in which Snyder retained control would not lead to actual accountability.

 **Ben**
@_BenBecker                                                    ···

This is incredibly important. People who care need to
pressure the NFL not to take DAN SNYDER'S hired
attorney's word for it (no matter how accomplished she
may be). NFL needs to conduct its own investigation or
nothing will change.

>  **ProFootballTalk** ✔ @ProFootballTalk · Jul 17, 2020
> The NFL typically hires the lawyer who investigates allegations of team
> misconduct; for some reason, the NFL plans to defer to the lawyer hired by
> Washington to investigate Washington wp.me/pbBqYq-bA1m

9:06 AM · Jul 17, 2020 · Twitter Web App

---

 **Naveed Khan**
@naveed_a_khan19                                               ···

Replying to @washingtonpost

NFL should investigate. Washington NFL Team's own
investigation will not be Credible. @NFL #NFL

11:58 AM · Jul 17, 2020 · Twitter Web App

---

 **BJL1906**
@Big_John_1906                                                 ···

Replying to @john_keim

Very weak statement by the NFL. You can't have and
"independent investigation" by someone you hire. The
league should have also launched an investigation if
they were serious. They spent millions on air pressure
in footballs but are cool sitting this one out. SMMFH

7:22 AM · Jul 17, 2020 · Twitter for Android

79.     And so, on August 31, 2020, in response to consumers' concerns, the NFL stepped

in to take over the investigation; Wilkinson would now report to Goodell and the League, rather

than Snyder and the Team.

80.     Snyder publicly endorsed the move, saying "Tanya [Snyder, his wife] and I

suggested that the NFL assume full oversight of the investigation so that the results are thorough,

complete and trusted by the fans, the players, our employees and the public." Snyder's statement

asserted that the Team "remains *committed to fully cooperating* with all aspects of the

investigation" (emphasis added).

81.     At the time, it was even reported (and later also asserted by Team representatives)

that Snyder and the Team were releasing former employees and cheerleaders from nondisclosure

agreements for the express purpose of speaking with the Wilkinson firm.

82.     Defendants chose to publicly transfer control over Wilkinson's investigation to the

NFL to bolster consumer confidence in their response to the *Post*'s reporting and the outcome of

the investigation.

83.     Lisa Friel, the NFL's internal head of investigations, said to the press: "Our

message to everyone has been consistent — we want to ensure that Beth Wilkinson can complete

her work thoroughly and *without interference*" (emphasis added).

84.     District consumers understood the NFL's takeover of the Wilkinson Investigation

to mean that the League would ensure the Investigation was free from Snyder's interference.

85.     Fans responded favorably and believed the transfer of power would lead to a

thorough investigation. For example:



86.     As demonstrated below, however, Defendants' statements were false, omitted material information, and had a tendency to mislead District consumers.

**B. Defendants Worked Behind The Scenes To Undermine the Promise of an Unbiased and Thorough Investigation.**

87.     The totality of Defendants' actions—out of public view—demonstrate they were acting in concert to hinder Wilkinson's investigative efforts, to permit interference with that investigation, and otherwise undermine their public statements that they would preserve the Investigation's integrity.

1.     <u>The NFL and the Team Entered into a Secret Agreement.</u>

88.     Days after publicly declaring that the NFL had taken control of the investigation away from the Team to ensure it was unbiased and fully independent, the NFL and the Team entered into a Common Interest Agreement (Agreement) that established their joint legal interest in upholding "the integrity of the Investigation and the defense of reasonably anticipated litigation." It allowed the sharing of confidential information and communications and other privileged information both among themselves and with Wilkinson's firm.

89.     In addition, the Agreement granted the Team and Snyder *the ability to block the release of any "information or communications" that resulted from it*, including what the public would ultimately learn about Wilkinson's findings.

90.     Entering into this Agreement directly contradicted the Team's and the NFL's public representations that the investigation would be free from interference and could be trusted by the fans. Through this Agreement, the NFL ultimately gave Snyder the power to veto the release of Wilkinson's investigation findings, thereby exercising continued control over the public's understanding of the Team's hostile workplace—all without the public's knowledge.

91.     Moreover, the NFL entered this agreement with full knowledge of the allegations of pervasive sexual harassment and misconduct that had been attached to Snyder and the Team for years.

92.     Defendants failed to disclose to consumers that they entered into this Agreement immediately after publicly reassuring consumers the NFL had assumed oversight of the Wilkinson Investigation, instead continuing their façade that the NFL had taken full control.

2.     The NFL Allowed Snyder to Attempt to Interfere in the Investigation.

93.     After the NFL took over the investigation, Snyder and the Team (acting at Snyder's direction) quickly launched an effort to discourage witnesses from participating and to influence Wilkinson's conclusions.

94.     With the NFL's blessing, Snyder and the Team attempted to hinder the investigation by preventing witnesses from speaking with Wilkinson. More specifically, Snyder and the Team sent private investigators to witness's homes and intimidated them, engaged in abusive litigation to prevent witness participation, and offered additional money to former employees who had previously settled claims against Snyder.

23

95.     The NFL was aware of Snyder's attempted interference with the investigation but allowed it to continue and downplayed its significance. Commissioner Goodell characterized Snyder's abusive litigation and use of private investigators as "a little bit of tug and pull with particularly [*sic*] lawyers and law firms," while publicly guaranteeing it did not interfere with Wilkinson's work.

> *a. Snyder used private investigators to intimidate witnesses.*

96.     Snyder actively interfered with the investigation by sending private investigators (PIs) on unannounced visits to witnesses' homes.

97.     Witnesses reported the PIs scared and discouraged them from participating in the Wilkinson Investigation or otherwise speaking publicly against Snyder, and they were afraid Snyder might find other ways to harm or intimidate them.

98.     One PI waited outside a witness's home for hours, showing up on multiple days, and also harassed her neighbors. When the witness ultimately spoke with the PI, he told her the Team sent him to speak with her. That witness subsequently reported being scared for her own safety and that of her children.

99.     Another witness said that she felt certain the PIs were sent by Snyder because they asked pointed questions about a former executive who Snyder had tried to blame for the misconduct.

100.    One of the named sources in the *Post*'s reporting about the nonconsensual cheerleader videos was alarmed to learn that Snyder and the Team sent PIs to the homes of his ex-wife and several of his former co-workers.

101.    The NFL knew of Snyder's use of PIs to try to obstruct the Investigation. On August 4, 2020, a witness informed the NFL's general counsel both that a PI employed by Snyder had

come to his home and that a former Team employee told him she was approached and "cornered" by a PI as well.

102.    Lawyers for former employees who had accused Snyder and others at the Team of sexual misconduct also told the NFL—on the same day it assumed control of the Wilkinson Investigation—that Snyder had been intimidating witnesses by sending PIs to their homes.

103.    Even armed with the knowledge of Snyder's efforts to intimidate witnesses and attempt to obstruct the Wilkinson Investigation, the NFL did nothing to stop them. To the contrary, the NFL allowed Snyder to maintain complete control over the investigation for weeks and then entered into the Agreement with the Team for continued access, including access to information that would allow him to target additional witnesses.

> b. *Snyder utilized abusive litigation to gather information and attempt to obstruct the investigation.*

104.    Contrary to their public commitment to ensure full cooperation with the investigation, the Team and Snyder also interfered with the Wilkinson Investigation by engaging in abusive litigation to gather information about potential witnesses.

105.    Shortly after the *Washington Post* exposés were published, Snyder filed a defamation case in New Delhi, India, related to an obscure online article that accused Snyder of sexual misconduct and connections to the infamous Jeffrey Epstein.

106.    While appearing unrelated, Snyder used this litigation as an additional means to attempt to obtain documents related to the *Washington Post* reporting through discovery proceedings in seven states. Snyder sought records related to the misconduct being investigated by Wilkinson, Beth Wilkinson herself, and witnesses in the investigation.

107.    At least one court believed that Snyder's purpose in pursuing this litigation was to find dirt on people he perceived to be his accusers or enemies. The Court admonished Snyder for

filing petitions that "are improper, unnecessarily invasive, and being done for what the Court perceives is an improper purpose—to discover the sources for the embarrassing and damning *Washington Post* story—rather than the proper purpose of discovering evidence about the defamatory Indian website publications. Even if this were not the intent of the subpoenas, it certainly *has an adverse and chilling effect* when persons who communicate with reporters on a story are at risk of having their phone records searched without substantial justification. I find that justification lacking here" (emphasis added).

108.    In a second case, the Team's former General Counsel, Dave Donovan, filed a lawsuit in federal court to block a witness from participating in the ongoing Wilkinson Investigation. The witness had accused Snyder of sexual assault on his private plane in 2009, resulting in a $1.6 million settlement from the Team. As the Team's signatory, Donovan attempted to enforce the confidentiality provisions in the settlement. Snyder had not released this witness from her non-disclosure agreement so she could participate in the Investigation, despite the Team's assurances to the contrary.

109.    Wilkinson herself suggested that the purpose of Donovan's lawsuit was to interfere with her investigation, and she accused Donovan of using "secret litigation to derail Ms. Wilkinson and her firm, Wilkinson Stekloff LLP, from conducting an independent investigation [] into allegations of sexual and other workplace misconduct."

110.    Wilkinson also described Donovan's efforts as part of a "weeks-long campaign" of attempts to force the witness into "silence and non-cooperation." The Team later endorsed Donovan's tactics by intervening in the litigation to block the release of documents, including the settlement agreement.

111.    Even if Wilkinson was able to resist Snyder's efforts and preserve the integrity and independence of her investigation, Wilkinson's comments make clear that Defendants fought her independence at every step, and they lied to the public when they promised the Team and Snyder's full cooperation.

112.    Later, Snyder used information gathered through these cases to compile a 100-slide dossier on nearly 50 individuals adverse to Snyder, including journalists, victims, whistleblowers, and victims' attorneys, as part of a presentation he made to the NFL and Wilkinson to undermine their credibility.

### c. Snyder tried to buy witnesses' silence.

113.    The Team and Snyder also attempted to buy the silence of multiple witnesses who had accused Snyder of sexual misconduct, further repudiating their public commitments to safeguard the independence of the Wilkinson Investigation and their public assurance that they were releasing current and former employees from nondisclosure agreements.

114.    Snyder attempted to pay the witness who had alleged that Snyder had assaulted her in 2009 an additional, substantial sum, beyond the amount paid in the original settlement, to prevent her from discussing the incident with Wilkinson.

115.    Snyder also settled claims with many of the cheerleaders who appeared, without their consent, in the voyeuristic calendar shoot videos, and he required them to sign NDAs as a condition of settlement, hindering their ability to speak with Wilkinson.

116.    Separately, Snyder offered financial settlements to another group of former employees who had accused Snyder and Team executives of harassment and misconduct. Snyder offered money to at least one employee in exchange for her silence in the investigation. Another said, "It just felt like they wanted to bury this and shut us up."

3.   The League and Team Worked Together to Block the Public's Knowledge of Wilkinson's Findings.

117.   When the NFL took over the Wilkinson Investigation, it wanted the public to have confidence in the process and outcome of the investigation. The NFL tried to maintain the appearance of credibility, but it did not follow through on its promises.

118.   At the time the NFL took over the Wilkinson Investigation, it already knew that Snyder was sending PIs to witnesses' homes and that Snyder had settled a prior sexual harassment allegation for $1.6 million.

119.   The NFL received its first briefing from the Wilkinson team before taking over the Investigation, in late August 2020. Throughout the Investigation, the Wilkinson firm regularly updated the NFL General Counsel's Office about their findings.

120.   Despite being read in, the NFL feigned ignorance. In February 2021, during a press conference, Goodell stated that Wilkinson was "nearing the completion" of her work, but that he had not yet met her. He committed that when he received the results of her investigation, he would share them with the Team "and others."

121.   By the end of February 2021, the NFL already had extensive, significant information about the Team's toxic culture, the widespread sexual harassment, and Snyder's role in all of it.

122.   On March 1, 2021, more than six months after the NFL publicly assumed control of the Wilkinson Investigation, a Washington, D.C. area sports radio program reported that, after reviewing a draft of Wilkinson's written recommendations, her top line recommendation was that the NFL "force the owner to divest his ownership of the team." As an alternative, Wilkinson reportedly recommended that the NFL "suspend the owner for a significant period to allow time to repair its infrastructure and culture."

123.    And yet, with this background, and after the NFL pledged to "take any action based on the findings" at the conclusion of the Wilkinson Investigation, the League demonstrated it had no intention of holding Snyder accountable. Instead, mere weeks after Goodell received his first of two oral briefings from Wilkinson, the NFL chose to make an exception to its rules related to the amount of debt a team owner may carry to allow Snyder to buy out three minority owners, giving him even more power and control around the League.

124.    Thus, rather than waiting for the outcome of the Wilkinson Investigation to ensure Snyder was fit to continue ownership of the Team, the NFL allowed Snyder and his family to consolidate 100% ownership of the team.

125.    When the Investigation did conclude, the Defendants worked together to keep consumers in the dark, under cover of their Agreement.

126.    The Wilkinson Investigation lasted approximately ten months. According to the NFL, the Investigation included interviews with 150 people, including two interviews with Dan Snyder. The Investigation also reviewed hundreds of thousands of Team documents.

127.    In July 2021, the NFL announced the results of the Wilkinson Investigation through a press release. The press release did not provide any details about Wilkinson's findings. Instead, the NFL summarized the Wilkinson's long, thorough investigation by saying only, "for many years the workplace environment at the Washington Football Team, both generally and particularly for women, was highly unprofessional. Bullying and intimidation frequently took place, and many described the culture as one of fear, and numerous female employees reported having experienced sexual harassment and a general lack of respect in the workplace. Ownership and senior management paid little or no attention to these issues."

128.    These few sentences were the entirety of what the League told the public about the investigation's findings. Wrongdoers were not named, and specifics were not provided.

129.    The NFL stated the Team would pay $10 million to unidentified third-party organizations and announced that Snyder was voluntarily stepping away from the day-to-day operation of the Team; his wife, Tanya, had been made co-CEO and would assume management of the Team.

130.    Before the announcement, and operating within the parameters of the Agreement, Snyder and Goodell privately discussed the outcome of the Investigation to reach agreement on the remedial actions that would be taken, including Snyder's own decisions about his role at the Team, and negotiated the content of the press release announcing both.

131.    That same day, the NFL let the public know for the first time that it did "not have a written report" from Wilkinson. Rather, they claimed, the League and Goodell requested to receive Wilkinson's findings "in oral briefings," citing confidentiality concerns.

132.    Many of the witnesses that participated in the Wilkinson Investigation did so because they believed it would contribute to a public airing of the extensive misconduct at the Team, via a public, written report. Those same witnesses have publicly called for the release of a report or findings, and some have said they would not have spoken to Wilkinson had they known there would be no written report.

133.    Counsel for more than 40 former Commanders employees wrote to Commissioner Goodell saying, "You have misrepresented the wishes of our clients, and likely those of other women and men who came forward, to justify your decision to bury what we know would be a damaging report."

134.    To date, the NFL and Goodell have refused to provide the public any additional information about Wilkinson's findings or her recommendations for remedial action.

4.    Defendants' Actions Contradict Their Public Statements and Undermine Consumers' Confidence in the Investigation's Outcome.

135.    As discussed above, Defendants repeatedly reassured fans that there would be an independent, thorough, and unbiased investigation, free from interference and conducted with the full cooperation of all parties.

136.    Defendants' statements were supported by their encouragement of employees past and present to participate in the Investigation and their implications that they would implement Wilkinson's recommendations.

137.    Taken together, District consumers were left believing that Defendants would do all they could to preserve the integrity of the Wilkinson Investigation, and that its findings would restore their trust and assuage concerns regarding continued support of the franchise.

138.    In reality, the picture Defendants painted for District consumers was terribly misleading, particularly during the Investigation, while consumers continued to purchase tickets and merchandise with the understanding that a thorough, unbiased investigation was underway.

139.    Defendants repeatedly sought to undermine the thoroughness and independence of the Investigation and concealed Wilkinson's findings from the public through a press release shrouded in ambiguity and void of meaningful detail.

140.    Taken together, Defendants' actions revealed a multifaceted attempt to undermine their own promises to the public, leaving District consumers with no greater understanding about what actually happened at the Team than they had before the Wilkinson Investigation began.

## IV. <u>DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS ARE MATERIAL TO DISTRICT CONSUMERS, WHO CARE DEEPLY ABOUT THE TEAM.</u>

141.    District consumers, particularly fans and former fans of the Team, care deeply about the allegations of sexual misconduct against Team executives and staff, especially the accusations that Snyder himself sexually harassed and abused employees. Moreover, they care whether the Wilkinson Investigation, aimed at addressing these concerns, was completed in an appropriate, independent, and fair manner. Before it became clear that the details of the Wilkinson Investigation would not be released, Defendants assured District consumers that the Wilkinson Investigation would be unbiased, free from interference, and trusted by fans, with the understanding that District consumers may not purchase tickets for an organization that engaged in such misconduct.

142.    As detailed below, District consumers' reactions when the truth finally came to light demonstrate that the outcome and handling of the Investigation were important factors in their decision to financially support the Team.

143.    For example, one fan penned an op-ed titled "Dear Dan Snyder: I Quit" in which he confessed that he was "canceling [his] fandom," because "[i]t's the depressing off-field spectacle that really rankles—the grim allegations of a toxic workplace and sexual assault and harassment; the NFL investigation that resulted in significant penalties to the team but— infuriatingly—no public report of its findings; and on and on. Who wants to root for all of that?"

144.    In reaction to the misconduct by Snyder, the abusive culture at the Team, and the lack of transparency surrounding the Wilkinson Investigation, fans at the stadium have begun protesting with signs and chants at Team home games demanding Snyder "Sell the Team." Such demands have intensified as new allegations and controversies have surfaced.



145.    Multiple well-trafficked websites have been put up by local fans demonstrating their displeasure with Snyder and the Team:

146.    One site, www.boycottdan.com, urges sponsors to boycott the Commanders and "Drop Dan or We Drop You" as a means of holding Snyder and the Team accountable for the pervasive sexual misconduct.



147.    Another website, www.firedansnyder.org, urges fans to contact their local lawmakers and government leaders to request that they not help the Commanders build a new stadium until Snyder sells the team, and calls for the NFL to release more detailed findings from the Wilkinson Investigation.



148.    The fan reaction to the unsatisfying conclusion of the Investigation demonstrates the importance of Defendants' assertions regarding the Investigation.

**CAUSES OF ACTION**

**COUNT I**
**DEFENDANTS MADE MISLEADING STATEMENTS AND FAILED TO DISCLOSE**
**MATERIAL INFORMATION RELATED TO THE WILKINSON INVESTIGATION IN**
**VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT**
**(ALL DEFENDANTS)**

149. The District incorporates the allegations contained in all prior paragraphs as if fully recited herein.

150. The CPPA is a remedial statute that is to be broadly construed. It establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

151. The goods and services that Defendants provide consumers are for personal, household, or family purposes and, therefore, are consumer goods and services.

152. The Defendants, in their ordinary course of business, supply consumer goods and services and, therefore, are merchants under the CPPA.

153. District residents receive consumer goods from Defendants through direct sales, advertisements, news outlets, and other commercial means and therefore, are consumers under the CPPA.

154. The CPPA prohibits unfair and deceptive trade practices in connection with the offer, sale, and supply of consumer goods and services.

155. Defendants have engaged, and continue to engage in, business acts or practices that have a tendency to mislead consumers. As alleged fully herein, these acts or practices include the following:

      a. Making explicit and implied misrepresentations related to the Wilkinson Investigation, including but not limited to Defendants' protection of the Investigation's independence, the thoroughness of the investigation, and

cooperation with the investigation, in violation of the CPPA, D.C. Code § 28-3904(e);

b. Failing to disclose material facts, including but not limited to: Defendants' agreement to coordinate with one another in the course of the Wilkinson Investigation, Defendants' interference with the Wilkinson Investigation, and Defendants' refusal to release detailed findings from the Investigation, the omission of all of which tended to mislead consumers and constitute unlawful trade practices that violate the CPPA, D.C. Code § 28-3904(f); and

c. Using ambiguity with respect to material facts related to Defendants' coordination with one another in the course of participating in and responding to the Wilkinson Investigation, the use of which tended to mislead consumers, in violation of the CPPA, D.C. Code § 28-3904(f-1).

**COUNT II**
**SNYDER AND THE TEAM MISLED THE PUBLIC AS TO THEIR KNOWLEDGE OF AND SNYDER'S PARTICIPATION IN CREATING THE TEAM'S TOXIC AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT**
**(WASHINGTON COMMANDERS AND DAN SNYDER)**

156. The District incorporates the allegations contained in all prior paragraphs as if fully recited herein.

157. The CPPA is a remedial statute that is to be broadly construed. It establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

158. The goods and services that the Defendants provide consumers are for personal, household, or family purposes and, therefore, are consumer goods and services.

159. The Defendants, in their ordinary course of business, supply consumer goods and services and, therefore, are merchants under the CPPA.

160. District residents receive consumer goods from Defendants through direct sales, advertisements, news outlets, and other commercial means and, therefore, are consumers under the CPPA.

161.    The services that the Team provides consumers through Snyder's ownership, leadership and direct involvement with the day-to-day operations of the Team are for personal, household, or family purposes and, therefore, are consumer goods and services.

162.    The CPPA prohibits unfair and deceptive trade practices in connection with the offer, sale, and supply of consumer goods and services.

163.    The Team and Snyder have engaged, and continue to engage in, business acts or practices that have a tendency to mislead consumers. As alleged fully herein, these acts or practices include the following:

    a.  Misrepresenting to consumers the extent of knowledge and participation of Snyder and Team management in creating the toxic and hostile work environment in violation of the CPPA, D.C. Code § 28-3904(e);

    b.  Failing to disclose material facts regarding Snyder's and Team management's knowledge of and participation in creating the toxic and hostile work environment, the omission of which tended to mislead consumers and constitute unlawful trade practices that violate the CPPA, D.C. Code § 28-3904(f); and

    c.  Using ambiguity with respect to material facts regarding Snyder's and Team management's knowledge of and participation in creating the toxic and hostile work environment, the use of which tended to mislead consumers and constitute unlawful trade practices that violate the CPPA, D.C. Code § 28-3904(f-1).

## PRAYER FOR RELIEF

WHEREFORE, the District requests that this Court enter judgment in its favor and grant relief against Defendants as follows:

(a)    Injunctive relief;

(b)    Equitable and declaratory relief;

(c)    Disgorgement, restitution and damages;

(d)    Civil penalties;

(e)    The District's reasonable attorneys' fees and costs; and

(f)    Such other and further relief as this Court deems appropriate based on the facts and applicable law.

## JURY DEMAND

The District of Columbia demands a jury trial by the maximum number of jurors permitted by law.

Dated:  November 10, 2022          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

JENNIFER C. JONES
Deputy Attorney General
Public Advocacy Division

*/s/ Alicia M. Lendon*
ALICIA M. LENDON [1765057]
Chief, Civil Rights Section
Public Advocacy Division

*/s/ Adam R. Teitelbaum*
ADAM R. TEITELBAUM [1015715]
Director, Office of Consumer Protection
Public Advocacy Division

*/s/ Andrew Mendrala*
ANDREW MENDRALA [1009841]
TONY TOWNS [433435]
SAMANTHA HALL [1014735]
JESSICA E. FEINBERG [1779644]
NICOLE HILL [888324938]
Assistant Attorneys General
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 727-3400
Andrew.Mendrala@dc.gov
Jessica.Feinberg@dc.gov

*Attorneys for the District of Columbia*

**APPENDIX**

**Defendants' Public Statements.**

Snyder's first statement responding to the allegations reported in the *Post* emphasized his

purported dedication to the thoroughness and independence of the investigation.

## STATEMENT FROM OWNER DAN SNYDER:

The behavior described in yesterday's *Washington Post* article has no place in our franchise or society.

This story has strengthened my commitment to setting a new culture and standard for our team, a process that began with the hiring of Coach Rivera earlier this year.

Beth Wilkinson and her firm are empowered to do a full, unbiased investigation and make any and all requisite recommendations. Upon completion of her work, we will institute new policies and procedures and strengthen our human resources infrastructure to not only avoid these issues in the future but most importantly create a team culture that is respectful and inclusive of all.

11:24 AM · Jul 17, 2020 · Twitter for iPhone

The same day, the NFL issued a statement also to soothe consumer concerns that supporting the Team would mean they were contributing to a misogynistic and toxic environment.



These matters as reported are serious, disturbing and contrary to the NFL's values. Everyone in the NFL has the right to work in an environment free from any and all forms of harassment. Washington has engaged outside counsel to conduct a thorough investigation into these allegations. The club has pledged that it will give its full cooperation to the investigator and we expect the club and all employees to do so. We will meet with the attorneys upon the conclusion of their investigation and take any action based on the findings.

The Team also commented after the second article and encouraged all employees to participate in the investigation and assured the public that all bad conduct will be eradicated.



**STATEMENT FROM THE WASHINGTON FOOTBALL TEAM**

"  Today the Washington Post published an article detailing additional allegations of sexual harassment and other misconduct at the Washington Football team. We are deeply distressed by these terrible allegations and are committed to investigating them fully. Our priority is creating a culture where our employees – on and off the field – are respected and empowered.

   Our first concern is for the safety and security of our teammates, and we have encouraged any employees who have endured similar experiences, now or in the past, to report it immediately. We are already taking a series of additional steps to hold ourselves accountable to our commitments. We remain focused on building an organization where all employees feel valued and are invested in shaping the new direction of our franchise. "

8:08 PM · Aug 26, 2020 · Twitter Web App

That same day, Snyder issued a second, lengthy statement responding to allegations of his own sexual misconduct against Team employees.

**Statement by Dan Snyder in response to Washington Post Allegations:**

The behavior described in the Washington Post's latest story has no place in our franchise, or in our society. While I was unaware of these allegations until they surfaced in the media, I take full responsibility for the culture of our organization. Even before today's article, I have begun taking any and all steps necessary to ensure that the Washington Football Team is an organization that is diverse, inclusive and respectful of all.

I have admittedly been too hands-off as an owner and allowed others to have day-to-day control to the detriment of our organization. Going forward I am going to be more involved, and we have already made major changes in personnel bringing in new leadership to drive cultural transformation on and off the field. In addition, we are assembling a world class team of external advisors to both investigate these allegations and create an actionable and measurable plan to change our culture.

The Washington Post article reads like a "hit job" relying on un-named sources and allegations that are largely ten to twenty years old. We attempted to engage with the Washington Post to provide them with the facts, but those facts clearly didn't align with their narrative. There are former employees on the record disputing many of these claims, and yet they still appear in print. It is clear that there are other negative agendas at work in this reporting.

We are disappointed that Ms. Scourby would speak to the newspaper but never bring any of these allegations to management's attention, particularly since she is still part of our organization as a volunteer with our cheerleaders. I want to unequivocally state that this never happened. Ms. Scourby did not report this alleged incident to anyone at the team in 2004, in her 8 years as a cheerleader, or at any time in the past 16 years.

Furthermore, I do not have any knowledge of the ten-year old videos referenced in the story. I did not request their creation and I never saw them. There are former employees on the record stating that this did not happen. The unnamed sources who claim it did happen are relying on three degrees of hearsay. After an extensive review of our video archives, we believe these videos to be unauthorized or fraudulent. We requested that the Post provide us with copies of these videos to be forensically evaluated and authenticated, but The Washington Post refused to do so.

This article is riddled with questionable and unnamed sources, decades old allegations and is not a reflection of The Washington Football Team today. I am going to work relentlessly to improve all aspects of the Washington Football Team and make this an organization that sets a positive example that we can all be proud of.

### #

The NFL and Goodell also issued a public statement in response to the second *Post* article, "strongly condemn[ing]" the allegations against Snyder and again promising the public that "any appropriate action" would be taken as a result of the investigation.



**National Football League**

View this press release online

Aug 26, 2020

### STATEMENT FROM NFL COMMISSIONER ROGER GOODELL

"We strongly condemn the unprofessional, disturbing and abhorrent behavior and workplace environment alleged in the report which is entirely inconsistent with our standards and has no place in the NFL.

An independent investigation into these issues is in process, led by highly experienced counsel recommended by our office.  We will continue to monitor the progress of this investigation and ensure that the club and its employees satisfy their obligation to give full cooperation to the investigators.  If at any time the club or anyone associated with the club fails to do so, the investigating counsel has been asked to promptly advise our office and we will take appropriate action. When the investigation concludes, we will review the findings and take any appropriate action at that time."

6:22 PM · Aug 26, 2020 · Twitter for iPhone

Days later, the NFL announced it was taking over the Wilkinson Investigation, and Snyder issued another public statement.

Daniel and Tanya Snyder later released a statement obtained by Rapoport:

*"Recently, The Washington Football Team launched an independent third-party investigation into allegations about our culture and incidents of harassment. In conversations with Commissioner Goodell, Tanya and I suggested that the NFL assume full oversight of the investigation so that the results are thorough, complete and trusted by the fans, the players, our employees and the public. I appreciate Commissioner Goodell agreeing to our suggestion and the entire Washington Football Team remains committed to fully cooperating with all aspects of the investigation."*

In a November 4, 2021 letter to Congress, the NFL explained its rationale for taking over the Wilkinson Investigation.

1.  **What reasons did the WFT provide for requesting that the NFL assume "full oversight" over Ms. Wilkinson's investigation, and why did the NFL agree to assume this role?**

    The NFL's understanding is that after the WFT retained Wilkinson Stekloff to conduct an investigation of the club's workplace culture, the WFT felt the NFL should assume responsibility over Ms. Wilkinson's investigation to eliminate questions or concerns about the independence of that investigation. Because the League believed assuming oversight of the investigation would facilitate a credible, thorough, and independent investigation, and would provide greater public assurance of the integrity and independence of the investigation, the League concluded that it should assume oversight over Ms. Wilkinson's investigation. The League also believed it was important to reassure potential victims that their experiences would be taken seriously by the investigators and would be kept confidential.

After approximately ten months of investigation, on July 1, 2021, the NFL and Goodell announced the "outcome of [the] Washington Football Team workplace review." The entire statement is incorporated here by reference.



## NFL ANNOUNCES OUTCOME OF WASHINGTON FOOTBALL TEAM WORKPLACE REVIEW

The National Football League today announced the outcome of the workplace review of the Washington Football Team led by independent counsel Beth Wilkinson, as well as remedial measures and penalties arising out of that review.



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**Case Number:** 2022-CAB-005171

**Case Caption:** District of Columbia v. Pro-Football Inc. et. al.

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| 02/10/2023 | 9:30 AM | Remote Courtroom 516 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Heidi M Pasichow. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb516

   Meeting ID: 129 776 4396

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.

## **ACCESSIBILITY AND LANGUAGE ACCESS**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.


**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.


**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.


**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Courtrooms are closed because of the COVID-19 or coronavirus pandemic. Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
**[(Click here for more information)](#)**



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.




# District of Columbia Courts

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:



| | |
|---|---|
| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

***You should bring the following items when you come to your scheduled site location***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.
4. A facial covering will be required for entry into the remote hearing location; if you do not have a facial covering one will be provided.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov




# Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

### Los centros de acceso remoto son:



**Sitio Remoto - 1**
Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

**Sitio Remoto - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

**Sitio Remoto - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

**Sitio Remoto - 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**Sitio Remoto - 5**
Reeves Center
2000 14th Street, NW, 2nd Floor
Community Room
Washington, DC 20009

**Sitio Remoto - 6**
Reeves Center
2000 14th Street, NW, Suite 300N
Office of the Tenant Advocate
Washington, DC 20009
*No se puede entrar sin cita previa*

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1.  Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2.  Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3.  Materiales para tomar nota, como papel y lápiz.

4.  Para ingresar al sitio de la audiencia remota deberá llevar una mascarilla facial; si no tiene mascarilla facial, se le proporcionará una.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

**2022-CAB-005171**

District of Columbia     Case Number: _____

vs     Date: __November 10, 2022__

Pro-Football, Inc. d/b/a Washington Commanders, et al.

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*   Jessica E. Feinberg | Relationship to Lawsuit |
| Firm Name:   Office of the Attorney General for the District of Columbia | ☒ Attorney for Plaintiff |
| Telephone No.:    Six digit Unified Bar No.: <br> 202-735-6637     1779644 | ☐ Self (Pro Se) <br> ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury     ☐ 6 Person Jury     ☒ 12 Person Jury

Demand: $ __Unspecified__     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**              **COLLECTION CASES**

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property |     Over $25,000 Pltf. Grants Consent |     Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees |     Under $25,000 Pltf. Grants Consent |     Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration <br>     Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☒ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, Not Malpractice) | ☐ 23 Tobacco |
| ☐ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE     IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D.  REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_Jessica Feinberg_
_____
Attorney's Signature

11/10/22
_____
Date

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
Plaintiff

vs.

Daniel Snyder
_____
Defendant

Case Number   2022-CAB-005171

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jessica E. Feinberg
_____
Name of Plaintiff's Attorney

400 6th St. NW, Suite 10100
_____
Address

Washington, D.C. 20001

(202) 727-3400
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date   November 22, 2022

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오.          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                  Demandante

              contra

                                               Número de Caso: _____

_____
                                  Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                               *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                  Por: _____

_____
Dirección                                               Subsecretario

_____

                                  Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 전화해 주십시오.     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia

_____
Plaintiff

vs.

Case Number  2022-CAB-005171

Roger Goodell

_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jessica E. Feinberg
_____
Name of Plaintiff's Attorney

400 6th St. NW, Suite 10100
_____
Address
Washington, D.C. 20001

(202) 727-3400
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date        November 22, 2022

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

Por: _____

_____
Dirección                                                    Subsecretario

_____

Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
                    Plaintiff
            vs.

Pro-Football Inc.                                    Case Number  2022-CAB-005171
_____
                    Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jessica E. Feinberg
_____
Name of Plaintiff's Attorney                        _Clerk of the Court_

400 6th St. NW, Suite 10100
_____
Address                                             By _____
Washington, D.C. 20001                                          Deputy Clerk

(202) 727-3400
_____
Telephone                                           Date  November 22, 2022
如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

Por: _____

_____
Dirección                                              Subsecretario

_____

Fecha _____

_____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
Plaintiff

vs.                                        Case Number  2022-CAB-005171

The National Football League
_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jessica E. Feinberg
_____
Name of Plaintiff's Attorney

400 6th St. NW, Suite 10100
_____
Address
Washington, D.C. 20001

(202) 727-3400
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date        November 22, 2022

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요.          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

_____          Por: _____
Dirección                                                        Subsecretario

_____

_____          Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**Case Number:** 2022-CAB-005171

**Case Caption:** District of Columbia v. Pro-Football Inc. et. al.

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| 02/10/2023 | 9:30 AM | Remote Courtroom 516 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Heidi M Pasichow | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

## To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb516

   Meeting ID: 129 776 4396

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

## Or to Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"

## Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.

## ACCESSIBILITY AND LANGUAGE ACCESS

### Persons with Disabilities:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

### Interpreting and Translation Services:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

### Servicios de interpretación y traducción:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

### የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሀፊ ቢሮ (ክለርክ'ስ አፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Courtrooms are closed because of the COVID-19 or coronavirus pandemic. Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  📞 Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is  clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
## (Click here for more information)

- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.




# District of Columbia Courts

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

**The remote site locations are:**

<table>
<tr>
<td>

**Remote Site - 1**
Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

</td>
<td rowspan="3"></td>
<td>

**Remote Site - 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

</td>
</tr>
<tr>
<td>

**Remote Site - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

</td>
<td>

**Remote Site - 5**
Reeves Center
2000 14th Street, NW, 2nd Floor
Community Room
Washington, DC 20009

</td>
</tr>
<tr>
<td>

**Remote Site - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

</td>
<td>

**Remote Site - 6**
Reeves Center
2000 14th Street, NW, Suite 300N
Office of the Tenant Advocate
Washington, DC 20009
*** No walk-ins at this location***

</td>
</tr>
</table>

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station.**  If you require special accommodations such as an interpreter for your hearing, please call 202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.
4. A facial covering will be required for entry into the remote hearing location; if you do not have a facial covering one will be provided.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call: **202-879-1900**
Email: DCCourtsRemoteSites@dcsc.gov



# Tribunales del Distrito de Columbia
## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de **lunes a viernes, de 8:30 am a 4:00 pm**.

**Los centros de acceso remoto son:**



| | |
|---|---|
| **Sitio Remoto - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sitio Remoto - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Sitio Remoto - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sitio Remoto - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame al **202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

4. Para ingresar al sitio de la audiencia remota deberá llevar una mascarilla facial; si no tiene mascarilla facial, se le proporcionará una.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

**Case Caption:**   District of Columbia v. Pro-Football Inc. et. al.

**To:**   Jessica E Feinberg                    **Case Number:**    2022-CAB-005171

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) Remote Initial Scheduling Conference on 02/10/2023 at 9:30 AM in **Remote Courtroom 516**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
- Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

  Link: dccourts.webex.com/meet/ctb516

  Meeting ID: 129 776 4396
- Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
- Call 202-860-2110 (local) or 844-992-4726 (toll-free)
  Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
- For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
- For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
- For case questions, call the Civil Actions Branch at 202-879-1133.
- To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Jessica E Feinberg
No Known Address

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   District of Columbia v. Pro-Football Inc. et. al.

**To:**  Nicole S Hill                                    **Case Number:**    2022-CAB-005171

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) Remote Initial Scheduling Conference on 02/10/2023 at 9:30 AM in **Remote Courtroom 516**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
- Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

  Link: dccourts.webex.com/meet/ctb516

  Meeting ID: 129 776 4396
- Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
- Call 202-860-2110 (local) or 844-992-4726 (toll-free)
  Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
- For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
- For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
- For case questions, call the Civil Actions Branch at 202-879-1133.
- To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Nicole S Hill
Office of the Attorney General for the District of
441 4th Street NW
Suite 650-N
WASHINGTON DC  20001

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
                                    Plaintiff
                vs.

                                                          Case Number  2022-CAB-005171

Daniel Snyder
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jessica E. Feinberg
_____
Name of Plaintiff's Attorney

400 6th St. NW, Suite 10100
_____
Address
Washington, D.C. 20001

(202) 727-3400
_____
Telephone

_Clerk of the Court_

By _____
                        Deputy Clerk

Date        November 22, 2022
_____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828        ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                        Demandante

          contra

                                        Número de Caso: _____

_____
                                        Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                              Por: _____

_____
Dirección                                        Subsecretario

_____
                              Fecha _____

_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화하십시오        የአማርኛ  ትርጉም  ለማግኘት  (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
                              Plaintiff
                    vs.

Pro- Football Inc.                              Case Number  2022- CAB- 005171
_____
                              Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jessica E. Feinberg
_____
Name of Plaintiff's Attorney

400 6th St. NW, Suite 10100
_____
Address
Washington, D.C. 20001

(202) 727- 3400
_____
Telephone

_Clerk of the Court_

By _____
        Deputy Clerk

Date         November 22, 2022

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십씨오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

Por: _____

_____
Dirección                                                    Subsecretario

_____

Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
                                    Plaintiff
                    vs.

                                                        Case Number  2022-CAB-005171

Roger Goodell
_____
                                    Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jessica E. Feinberg
_____
Name of Plaintiff's Attorney

400 6th St. NW, Suite 10100
_____
Address
Washington, D.C. 20001

(202) 727-3400
_____
Telephone

_Clerk of the Court_

By _____
                        Deputy Clerk

Date        November 22, 2022
        _____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____                 *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

_____        Por: _____
Dirección                                                                          Subsecretario

_____
                                                                    Fecha _____
Teléfono
如需翻译,请打电话 (202) 879-4828         Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오        የአማርኛ ትርጉም ለማግኘት  (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
Plaintiff

vs.

The National Football League
_____
Defendant

Case Number  2022-CAB-005171

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jessica E. Feinberg
_____
Name of Plaintiff's Attorney

400 6th St. NW, Suite 10100
_____
Address
Washington, D.C. 20001

(202) 727-3400
_____
Telephone

_Clerk of the Court_

By _____
          Deputy Clerk

Date _____
      November 22, 2022

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

Por: _____

_____
Dirección                                                          Subsecretario

_____

Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት  (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |  |
|---|---|---|
| **DISTRICT OF COLUMBIA** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2022-CAB-005171 |
| | ) | Judge Heidi M. Pasichow |
| **PRO-FOOTBALL, INC. D/B/A** | ) | Next Event: Initial Scheduling Conference |
| **WASHINGTON COMMANDERS,** | ) | |
| **DANIEL SNYDER, THE NATIONAL** | ) | |
| **FOOTBALL LEAGUE, and ROGER** | ) | |
| **GOODELL,** | ) | Date: February 10, 2023 at 9:30 AM |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JOINT MOTION TO EXTEND DEFENDANTS'**
**TIME TO RESPOND TO PLAINTIFF'S COMPLAINT AND TO ADJOURN INITIAL**
**SCHEDULING CONFERENCE**

All Parties hereby jointly move the Court, pursuant to Super. Ct. R. Civ. P. 6(b)(1), to extend Defendants' time and to set a schedule for the filing of responses to Plaintiff's Complaint and to adjourn the Initial Scheduling Conference.

On November 10, 2022, Plaintiff the District of Columbia (the District) filed a complaint initiating the above-captioned case. Defendant Pro-Football, Inc. d/b/a the Washington Commanders (the Team) was served with the Complaint on November 23, 2022. The remaining Defendants, Daniel Snyder, the National Football League, and Roger Goodell, were served with the Complaint on December 2, 2022. All Defendants acknowledge receipt of service of the Complaint, Summons, Initial Order, and Notice of the Initial Scheduling Conference.[1]

---

[1] Defendants reserve all defenses they may have, including defenses based on lack of personal jurisdiction, and do not waive any defenses by accepting service or by submitting this joint motion.

The Parties have shown good cause for the request to extend, as required by Super. Ct. R. Civ. P. 6(b)(1). Because potential responses to the Complaint, including potential motions to dismiss, will likely rely on similar legal theories and address similar facts, it is in the interest of the Parties and the Court to set a uniform briefing schedule. The relief requested therefore serves the fundamental interests of justice and judicial economy, and it will not prejudice any of the Parties to this action.  Therefore, the Parties hereby move the Court to set the following schedule:

1.  Responsive pleadings or motions shall be due within 90 days of the date that all Defendants were served with the Complaint, March 2, 2023;

2.  If necessary, Plaintiffs' Oppositions to any Motions to Dismiss shall be due within 60 days of the filing of such a motion; and

3.  Any Reply briefs shall be due within 45 days of the filing of an Opposition.

Additionally, the Parties agree that judicial economy and convenience may counsel in favor of the District filing a single, omnibus Opposition to all Motions to Dismiss. In the event that the District elects to file such an omnibus Opposition to all Defendants' Motions, the Parties agree that the District should be granted leave to file an Opposition that is no more than 40 pages long, double spaced. Defendants reserve the right to file a motion asking the Court for leave to file Reply briefs that exceed the Court's page limits.

Finally, the Parties agree that because briefing on potential motions to dismiss will not be fully briefed and ripe for decision by February 10, 2023, it is therefore in the interest of judicial economy to adjourn the Initial Scheduling Conference set for February 10, 2023 until a date after such briefing is concluded.

Dated: December 8, 2022       Respectfully Submitted,
KARL A. RACINE
Attorney General for the District of Columbia

JENNIFER C. JONES

Deputy Attorney General
Public Advocacy Division

/s/ Alicia M. Lendon
ALICIA M. LENDON [1765057]
Chief, Civil Rights Section
Public Advocacy Division

/s/ Adam R. Teitelbaum
ADAM R. TEITELBAUM [1015715]
Director, Office of Consumer Protection
Public Advocacy Division

/s/ Andrew C. Mendrala
ANDREW C. MENDRALA [1009841]
TONY TOWNS [433435]
SAMANTHA HALL [1014735]
JESSICA E. FEINBERG [1779644]
NICOLE HILL [888324938]
Assistant Attorneys General
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 727-3400
Andrew.Mendrala@dc.gov

*Attorneys for the District of Columbia*

/s/ Stuart G. Nash
STUART G. NASH [444058]
JOHN L. BROWNLEE [452665]
TIMOTHY J. TAYLOR [1005503]
DAVID L. HALLER [1026467]
Holland & Knight LLP
800 17th Street, N.W., Suite 1100
Washington, DC 20006
(202) 469-5158
(202) 955-5564
stuart.nash@hklaw.com
john.brownlee@hklaw.com
timothy.taylor@hklaw.com
david.haller@hklaw.com

/s/ Karen Patton Seymour
KAREN PATTON SEYMOUR (*pro hac vice pending*)
Sullivan & Cromwell LLP

3

125 Broad Street
New York, NY 10004
(212) 558-4000
seymourk@sullcrom.com

*/s/ Judson O. Littleton*
JUDSON O. LITTLETON [1027310]
KAMIL R. SHIELDS [16744318]
Sullivan & Cromwell LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
(202) 956-7500
littletonj@sullcrom.com
shieldska@sullcrom.com

*Attorneys for Pro-Football, Inc. and Daniel Snyder*


*/s/ Eric H. Holder*
ERIC H. HOLDER [303115]
PHYLLIS A. JONES [983154]
ANDREW J. SOUKUP [995101]
Covington & Burling LLP
One CityCenter
850 Tenth Street N.W.
Washington, D.C. 20001
(202) 662-6000
holdereh@cov.com
pajones@cov.com
asoukup@cov.com

*Attorneys for The National Football League and
Commissioner Roger Goodell*


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 8th day of December 2022, a true and correct copy of the foregoing

was filed with the Clerk of Court and served electronically via eFileDC upon all counsel of record.


/s/ *Andrew C. Mendrala*

ANDREW C. MENDRALA [1009841]
Assistant Attorney General

4

400 6th Street, N.W.
Washington, D.C. 20001
(202) 727-3400 (Phone)
(202) 741-8949 (Fax)
andrew.mendrala@dc.gov

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

|  |  |  |
|---|---|---|
| **DISTRICT OF COLUMBIA** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2022-CAB-005171 |
| | ) | Judge Heidi M. Pasichow |
| **PRO-FOOTBALL, INC. D/B/A** | ) | Next Event: Initial Scheduling Conference |
| **WASHINGTON COMMANDERS,** | ) | |
| **DANIEL SNYDER, THE NATIONAL** | ) | |
| **FOOTBALL LEAGUE, and ROGER** | ) | |
| **GOODELL,** | ) | Date: February 10, 2023 at 9:30 AM |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] ORDER

Upon consideration of the Joint Motion To Extend Defendants' Time to Respond to Plaintiff's

Complaint and to Adjourn Initial Scheduling Conference, it is hereby:

**ORDERED** that the Joint Motion To Extend Defendants' Time to Respond to Plaintiff's

Complaint and to Adjourn Initial Scheduling Conference is **GRANTED**; and it is further

**ORDERED** that any response to Plaintiff's Complaint be filed within 90 days of December 2,

2022, the date by which all Defendants were served with the Complaint, that any Opposition to

any Motion to Dismiss be filed within 60 days of such motion, and any Reply be filed within 45

days of any Opposition; and it is further

**ORDERED** that Plaintiff be granted leave, at the District's discretion, to file a single, omnibus

Opposition to all Motions to Dismiss, and that in the event Plaintiff files such a motion, it shall

be granted leave to file an opposition no longer than 40 pages; and it is further

**ORDERED** that the Initial Scheduling Conference set for February 10, 2023 is **VACATED**.

**IT IS SO ORDERED.**

_____          _____
Dated                            The Honorable Heidi M. Pasichow
                                 Judge, Superior Court of the
                                 District of Columbia

 Electronic Copies to: All counsel of record by eFileDC.

eFiled
12/15/2022 2:21:37 PM
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **DISTRICT OF COLUMBIA,**<br><br>        Plaintiff<br><br>v.<br><br>**PRO-FOOTBALL INC,** *et al.*,<br><br>        Defendants | Civ. No. 2022 CAB 005171 |

## AFFIDAVIT OF JESSICA FEINBERG

I, Jessica Feinberg, Assistant Attorney General, Office of the Attorney General for the District

of Columbia, duly sworn, depose and say that:

1.      I am an attorney in the Office of the Attorney General for the District of Columbia.

2.      I am over the age of eighteen years.

3.      I am not a party to the above-captioned action.

4.      My work address is the Office of the Attorney General for the District of Columbia, 400

6th St., NW, Washington, DC 20001.

5.      On Wednesday, November 23, 2022, at approximately 12:01 p.m., I personally served

Roger Goodell via attorney Robert Kelner (rkelner@cov.com), who is authorized to

receive service, with court documents (Complaint, Summons, Initial Order, and Hearing

Notice) via electronic mail.

6.      Also copied on the email were attorneys Eric Holder (holdereh@cov.com) and Simone

Ross (sross@cov.com).

7.     Andrew Soukop (asoukop@cov.com), another Covington attorney also authorized to

receive service, acknowledged service would be effective as of December 2, 2022, in an

email sent on Thursday, December 1, 2022, at approximately 3:45 p.m.

8.     Mr. Soukop confirmed he accepted service via email on behalf of Mr. Goodell in an

email sent on Wednesday, December 7, 2022, at approximately 1:05 p.m.

_____

Jessica Feinberg
Assistant Attorney General

Signed and sworn before me this ___14th___ day of December 2022
DISTRICT OF COLUMBIA, SS.

_____
Notary Public, D.C.

My Commission expires___10-14-23_____



## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **DISTRICT OF COLUMBIA,** | |
| Plaintiff | Civ. No. 2022 CAB 005171 |
| v. | |
| **PRO-FOOTBALL INC**, *et al.*, | |
| Defendants | |

### AFFIDAVIT OF JESSICA FEINBERG

I, Jessica Feinberg, Assistant Attorney General, Office of the Attorney General for the District

of Columbia, duly sworn, depose and say that:

1.   I am an attorney in the Office of the Attorney General for the District of Columbia.

2.   I am over the age of eighteen years.

3.   I am not a party to the above-captioned action.

4.   My work address is the Office of the Attorney General for the District of Columbia, 400

6th St., NW, Washington, DC 20001.

5.   On Friday, December 2, 2022, at approximately 2:01 p.m., I personally served Daniel

Snyder via attorney Stuart Nash (stuart.nash@hklaw.com), who is authorized to receive

service, with court documents (Complaint, Summons, Initial Order, and Hearing Notice) via

electronic mail.

6.   Also copied on the email were attorneys John Brownlee (john.brownlee@hklaw.com),

Jordan Siev (jsiev@reedsmith.com), James McCarroll (jmccarroll@reedsmith.com),

Karen Seymour (seymourk@sullcrom.com), and Kamil Shields

(shieldska@sullcrom.com).

7.   Stuart Nash confirmed he was accepting service via email on behalf of Mr. Snyder in an

email response sent on Friday, December 2, 2022, at approximately 2:10 p.m.

*Jessica Feinberg*

Jessica Feinberg
Assistant Attorney General


Signed and sworn before me this __14ᵗʰ__ day of December 2022
DISTRICT OF COLUMBIA, SS.

*Audrey Brown*

Notary Public, D.C.


My Commission expires___10- 14- 23_____



eFiled
12/15/2022 2:24:01 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **DISTRICT OF COLUMBIA,** | |
| Plaintiff | Civ. No. 2022 CAB 005171 |
| v. | |
| **PRO-FOOTBALL INC,** *et al.*, | |
| Defendants | |

### AFFIDAVIT OF JESSICA FEINBERG

I, Jessica Feinberg, Assistant Attorney General, Office of the Attorney General for the District

of Columbia, duly sworn, depose and say that:

1. I am an attorney in the Office of the Attorney General for the District of Columbia.

2. I am over the age of eighteen years.

3. I am not a party to the above-captioned action.

4. My work address is the Office of the Attorney General for the District of Columbia, 400
   6th St., NW, Washington, DC 20001.

5. On Wednesday, November 23, 2022, at approximately 12:01 p.m., I personally served
   Pro-Football Inc. via attorney Stuart Nash (stuart.nash@hklaw.com), who is authorized
   to receive service, with court documents (Complaint, Summons, Initial Order, and Hearing
   Notice) via electronic mail.

6. Also copied on the email were attorneys John Brownlee (john.brownlee@hklaw.com),
   Jordan Siev (jsiev@reedsmith.com), James McCarroll (jmccarroll@reedsmith.com),
   Karen Seymour (seymourk@sullcrom.com), and Kamil Shields
   (shieldska@sullcrom.com).

7.    Stuart Nash confirmed he was accepting service via email on behalf of Pro-Football Inc.

in an email response sent on Wednesday, November 23, 2022, at approximately 3:25

p.m.

_Jessica Feinberg_

Jessica Feinberg
Assistant Attorney General

Signed and sworn before me this ___14th___ day of December 2022
DISTRICT OF COLUMBIA, SS.

_Audrey Brown_
Notary Public, D.C.

My Commission expires___10-14-23_____



eFiled
12/15/2022 2:28:17 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **DISTRICT OF COLUMBIA,** | |
| Plaintiff | Civ. No. 2022 CAB 005171 |
| v. | |
| **PRO-FOOTBALL INC,** *et al.*, | |
| Defendants | |

### AFFIDAVIT OF JESSICA FEINBERG

I, Jessica Feinberg, Assistant Attorney General, Office of the Attorney General for the District

of Columbia, duly sworn, depose and say that:

1.  I am an attorney in the Office of the Attorney General for the District of Columbia.

2.  I am over the age of eighteen years.

3.  I am not a party to the above-captioned action.

4.  My work address is the Office of the Attorney General for the District of Columbia, 400

    6th St., NW, Washington, DC 20001.

5.  On Wednesday, November 23, 2022, at approximately 12:01 p.m., I personally served

    the National Football League via attorney Robert Kelner (rkelner@cov.com), who is

    authorized to receive service, with court documents (Complaint, Summons, Initial Order,

    and Hearing Notice) via electronic mail.

6.  Also copied on the email were attorneys Eric Holder (holdereh@cov.com) and Simone

    Ross (sross@cov.com).

7.      Andrew Soukop (asoukop@cov.com), another Covington attorney also authorized to

receive service, acknowledged service would be effective as of December 2, 2022, in an

email sent on Thursday, December 1, 2022, at approximately 3:45 p.m.

8.      Mr. Soukop confirmed he accepted service via email on behalf of the National Football

League in an email sent on Wednesday, December 7, 2022, at approximately 1:05 p.m.

Jessica Feinberg
Assistant Attorney General

Signed and sworn before me this _14th_ day of December 2022
DISTRICT OF COLUMBIA, SS.

Notary Public, D.C.

My Commission expires_ 10-14-23 _

