# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DISTRICT OF COLUMBIA**<br><br>        **PLAINTIFF,**<br><br>   v.<br><br>**PRO-FOOTBALL INC. d/b/a WASHINGTON COMMANDERS, DANIEL SNYDER, THE NATIONAL FOOTBALL LEAGUE, and ROGER GOODELL,**<br><br>      **DEFENDANTS.** | **Case No.: 1:22-cv-03813 (TSC)** |

## PLAINTIFF DISTRICT OF COLUMBIA'S MOTION TO REMAND TO THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1447(c), Plaintiff District of Columbia (the "District") respectfully moves to remand this case to the Superior Court of the District of Columbia for lack of subject matter jurisdiction. The sole basis for subject matter jurisdiction raised by Defendants is diversity jurisdiction, but well-settled case law holds that there can be no diversity jurisdiction over a government enforcement action such as this one. The District also requests that Defendants pay the costs, including attorneys' fees, incurred as a result of the removal of this case, for which there is no objectively reasonable basis. Attached is a Memorandum of Law in further support of this Motion and a Proposed Order.

Dated: December 30, 2022

                         Respectfully submitted,

                         KARL A. RACINE
                         Attorney General for the District of Columbia

JENNIFER C. JONES
Deputy Attorney General
Public Advocacy Division

ALICIA M. LENDON
Chief, Civil Rights & Elder Justice Section

*/s/ Andrew Mendrala*
ANDREW MENDRALA (#1009841)
Assistant Attorney General

JAMES ANTHONY TOWNS (#433435)
Assistant Attorney General

Office of the Attorney General
400 Sixth Street, N.W., 10th Floor
Washington, D.C. 20001
(202) 724-9726
Andrew.Mendrala@dc.gov


Dated: December 30, 2022


## LCvR 7(m) Statement

The District sought consent to this Motion from all Defendants. At the time of filing, Defendants have not provided consent.

*/s/ Andrew Mendrala*
ANDREW MENDRALA

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DISTRICT OF COLUMBIA**<br><br>PLAINTIFF,<br><br>v.<br><br>**PRO-FOOTBALL INC. d/b/a WASHINGTON COMMANDERS, DANIEL SNYDER, THE NATIONAL FOOTBALL LEAGUE, and ROGER GOODELL,**<br><br>DEFENDANTS. | **Case No.: 1:22-cv-03813 (TSC)** |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO REMAND TO THE SUPERIOR COURT OF THE**
**DISTRICT OF COLUMBIA FOR LACK OF SUBJECT MATTER JURISDICTION**

**INTRODUCTION**

Plaintiff the District of Columbia (the "District" or OAG) brought this consumer protection enforcement action against Defendants Pro-Football Inc. d/b/a Washington Commanders (the Team), Daniel Snyder, The National Football League (the League or the NFL), and Roger Goodell (together, Defendants), in the Superior Court for the District of Columbia, in connection with their deceptive statements and omissions about a sham independent investigation into allegations of sexual misconduct and a hostile work environment at the Team. Through their misrepresentations and omissions, Defendants sought to reassure consumers that by supporting the Team and the League, they would no longer be supporting dysfunctional and misogynistic organizations. This is a civil law enforcement action in which the District seeks to enforce and uphold the integrity of its consumer protection laws and obtain injunctive relief, civil penalties, and restitution and other relief for District consumers impacted by Defendants' deceptive behavior. The Team and Mr.

Snyder removed this matter to federal court despite the lack of any federal claims or issues, and in the face of well-settled law holding that diversity jurisdiction cannot lie in government enforcement actions such as this one.

Remand is required because the Team and Mr. Snyder have failed to meet their burden of establishing subject matter jurisdiction. Their specious arguments that diversity jurisdiction exists because the District is only a nominal party are unsupported by the law and entitle the District to the attorneys' fees and costs that it has incurred in defending against this removal. Such consequences are necessary to deter Defendants' futile gamesmanship, which will harm the District and its residents by delaying resolution of this matter.

## BACKGROUND

On November 10, 2022, the District filed its Complaint against Defendants. The Complaint alleges that in 2020—after public reporting exposed a team culture and workplace where sexual misconduct, harassment, and misogyny ran rampant—the League, the Team, Mr. Snyder, and Mr. Goodell all publicly assured fans they were conducting an independent investigation, free from any interference by Mr. Snyder, to uncover the facts and make things right. *See* Compl. ¶¶ 35-69. These statements were deceptive. Instead, the NFL turned a blind eye to Mr. Snyder's extensive efforts to silence and intimidate witnesses, and the League and the Commanders entered into a secret agreement that gave Mr. Snyder the power to veto the release of the investigation's results. *Id.* ¶¶ 70-140. Ultimately, the NFL refused to release any detailed findings after a lengthy internal investigation. *Id.* ¶¶ 126-134. Contrary to Defendants' prior assurances, this left District consumers with no understanding of the misconduct that occurred at the Team and no assurance that measures taken by Defendants would actually redress the malfeasance. *Id.* Finally, the Complaint alleges that "District consumers, particularly fans and former fans of the Team, care deeply about the

allegations of sexual misconduct against Team executives and staff, especially accusations that Snyder himself sexually harassed and abused employees," and "the outcome and handling of the Investigation were important factors in [fans'] decision to financially support the Team." *Id.* ¶¶ 141-142.

The Complaint's two counts are for violations of the District's Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq.* Compl. ¶¶ 149-163. The CPPA grants the Attorney General authority to enforce the statute on behalf of the public interest, D.C. Code § 28-3909(a), and to remedy all improper trade practices and promote fair business practices, *id.* § 28-3901(b). As permitted in civil law enforcement actions brought under the CPPA, the District seeks permanent injunctive relief, restitution, and civil penalties. *See id.* § 28-3909.

## STANDARD OF REVIEW

"Under our federal system, 'federal courts are courts of limited jurisdiction.' Indeed, 'the law presumes that 'a cause lies outside of the court's limited jurisdiction.'" *Stein v. Am. Exp. Travel Related Servs.*, 813 F. Supp. 2d 69, 71 (D.D.C. 2011) *(internal citations omitted)*. "A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court." *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 28 U.S.C. § 1441). To meet this subject matter jurisdiction requirement, the removing party must establish either federal question jurisdiction or diversity jurisdiction. *See* 28 U.S.C. § 1441; *Falconi-Sachs v. LPF Senate Square, LLC,* 963 F. Supp. 2d 1, 2 (D.D.C. 2013) (removing party bears the burden of proof for establishing subject matter jurisdiction in removal actions).

"When a plaintiff files a motion to remand, 'the removing defendant bears the burden of proving that removal was proper' . . . 'Courts in this circuit have construed removal jurisdiction

strictly, favoring remand where the propriety of removal is unclear.'" *Arenivar v. Manganaro Midatlantic, LLC,* 317 F. Supp. 3d 362, 367 (D.D.C. 2018) (*internal citations omitted*). Courts must "strictly construe[ ] the scope of [their] removal jurisdiction" in order to avoid federalism concerns. *Downey v. Ambassador Devel., LLC*, 568 F.Supp.2d 28, 30 (D.D.C. 2008) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941)). If the removing party fails to establish subject matter jurisdiction, the district court must remand the case back to state court. 28 U.S.C. § 1447(c). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.*

## ARGUMENT

The District brought this enforcement action to establish a fair marketplace, prevent and redress consumer injury, and seek civil penalties and other equitable relief under its consumer protection laws. In such cases there is no diversity jurisdiction, the sole basis for subject matter jurisdiction asserted by the Team and Mr. Snyder. Defendants' lack of a reasonable basis to support the removal of this action—which will likely delay its resolution by months, to the detriment of District consumers—entitles the District to its fees and costs in moving to remand.[1]

## I.    The Team and Mr. Snyder have failed to meet their burden of establishing subject matter jurisdiction.

Diversity jurisdiction requires the parties to be "citizens of different states," 28 U.S.C. §1332(a)(1), and the statute expressly defines the word "states" to "include . . . the District of Columbia," *id.* §1332(e). Courts have consistently held that the state itself is not, and cannot be,

---

[1] Removal may also be procedurally deficient for failure to comply with 28 U.S.C. § 1446(d), for failing to provide notice of removal to the Superior Court of the District of Columbia. On December 29, 2022, six days after Defendants removed this action to federal District Court, the Superior Court granted a joint motion for an extension of time for Defendants to respond to the complaint, apparently unaware of Defendants' intent to remove this action. As of the time of filing, the electronic docket for the underlying matter in Superior Court does not reflect the filing of a notice of removal.

both a 'state' and a 'citizen of a State' as required for this type of federal jurisdiction. *Moore v. County of Alameda,* 411 U.S. 693, 717-18 (1973). This principle has been regularly applied in actions, like this one, to which the District is a party:

> It has been established for over a century, however, "that a State is not a 'citizen' for purposes of the diversity jurisdiction." *(citation omitted)*. The same holds true, moreover, for the District of Columbia, see *Long v. District of Columbia*, 820 F. 2d 409, 414 (D.C. Cir. 1987) . . . . As the D.C. Circuit has explained:

> The only "State" of which the District could conceivably be a citizen is the District itself; thus, the District is subject to diversity jurisdiction only if the District is a citizen of itself. We cannot subscribe to such a bizarre characterization of the District of Columbia. As we have noted, the Supreme Court has held repeatedly that the fifty states are not citizens of themselves .... We can think of no reason for holding that the fifty states are not citizens of themselves, but the District is a citizen of itself. The rationale underlying the Supreme Court's teaching is that a whole cannot be a citizen of the whole. This rationale applies as well to the District of Columbia as to any of the fifty states. We therefore think the conclusion inescapable that the District, like the fifty states, is not subject to diversity jurisdiction.

*Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc*., 253 F. Supp. 3d 210, 215 (D.D.C. 2017) (quoting *Long*, 820 F. 2d at 414); *see also D.C. v. Vizion One, Inc.*, No. 21-CV-1071 (TSC), 2022 WL 522980, at *3 (D.D.C. Feb. 22, 2022) (remanding because, in part, the "District of Columbia is not a 'citizen' of any state for purposes of diversity jurisdiction"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 354 F. Supp. 3d 1122, 1124 (N.D. Cal. 2019) (remanding consumer protection enforcement action because "[a] case brought by a state, under state law, cannot be filed in or removed to federal court.").

The Team and Mr. Snyder concede, as they must, that there is generally no diversity jurisdiction where the District is a party. Notice of Removal ¶ 11. But they rely on a narrow exception to that rule that provides diversity jurisdiction where the state "merely asserts the personal claims of" state citizens, suggesting that the District is merely seeking monetary relief for

a discrete group of consumers, and not bringing a broader civil law enforcement action. *Id.* ¶¶ 11-15. This argument deeply misconstrues the District's case and is contrary to precedent.

The District brought this government enforcement action on behalf of the District itself and all its citizens to protect them from fraudulent and deceptive practices, to ensure the integrity of the District's consumer protection laws, and to ensure a fair marketplace for all District consumers. *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 150 (D.D.C. 2002) (noting that "[a] state's concern for the 'continuing prosperity of [its] econom[y]' falls within the 'recognized category of quasi-sovereign interests' which justify *parens patriae* standing.") (quoting *Commonwealth of Penn. v. Kleppe*, 533 F.2d 668, 675 (D.C. Cir. 1976)); *cf.* D.C. Code § 28-3901(b)(2) (noting that CPPA was enacted to "promote, through effective enforcement, fair business practices throughout the community"); *Mississippi ex. Rel Hood v. AU Optronics Corp.*, 571 US 161, 176 (2014) (remand required in mass *parens patriae* action brought by state directly on behalf of citizens). Under the CPPA, OAG may only sue "in the public interest, generally, [and] not on behalf of individual or discrete groups of citizens." *District of Columbia v. Exxon Mobil Corp.*, No. 20-1932 (TJK), 2022 WL 16901988, at *9 (D.D.C. Nov. 12, 2022) (holding that there was no diversity jurisdiction in CPPA enforcement action brought by Attorney General for the District of Columbia and remanding) (quoting D.C. Code § 28-3909(a)).

By pursuing these goals in this enforcement action, the District holds a quasi-sovereign interest in protecting its citizens and upholding the integrity of its laws. *See AU Optronics Corp. v. South Carolina,* 699 F.3d 385, 394 (4th Cir. 2012) (affirming remand and holding that the State holds a "quasi-sovereign interest in enforcing its own laws" and the purpose of consumer protection cases brought by State "is the protection of the State's citizens and upholding the integrity of [state] law."); *Exxon Mobil Corp.*, 2022 WL 16901988, at *9 ("The [Consumer

Protection and Procedures] Act itself makes clear that the District has a 'quasi-sovereign interest' in prosecuting consumer protection violations."). For example, in *Nevada v. Bank of America Corp.*, the court found the state to be the real party in interest because the state brought "suit pursuant to its statutory authority under [its consumer protection statute] because of its interest in protecting the integrity of mortgage loan servicing." 672 F.3d 661, 670 (9th Cir. 2012). The court distinguished the case from one in which it found diversity jurisdiction when the state brought an action on behalf of a single aggrieved employee. *Id.*

In *People by Underwood v. LaRose Indus. L.L.C.,* 386 F. Supp. 3d 214, 218 (N.D.N.Y. 2019), the court, in declining diversity jurisdiction, detailed the substantive concerns that a state may have about a defendant's activities, making it the real party in interest in a *parens patriae* consumer protection enforcement action. These include: a) an interest in the economic well-being of its residents, b) the State's goal of securing an honest marketplace in which to transact business, and c) an injury to a sufficiently substantial segment of its population. *Id.* The court specifically noted the state's interest in enforcing its consumer protection laws: "Moreover, the State brings this action to stop Defendant's 'deceptive acts or practices,' 'false advertising,' and 'repeated fraudulent or illegal acts,' all of which support the State's interest in enforcing an honest marketplace in which to transact business." *Id.*

Here too, concerns about the economic well-being of District residents and securing an honest marketplace were driving factors in the District bringing this enforcement action. A core part of OAG's work is to ensure that the District economy is free from merchants' deception like the repeated misrepresentations Defendants peddled. Moreover, the Washington Commanders target District residents as the Team's core fan base, its games dominate television and radio in the District, and District residents care deeply about the Defendants' misrepresentations and

omissions. Compl. ¶¶ 26-34; 141-148. Defendants' activity in the District has impacted a substantial segment of the District population, and the District is therefore the real party in interest, defeating diversity jurisdiction.

In *Exxon Mobil*, the court outlined the practical ways in which a CPPA enforcement action brought by OAG demonstrates that the District has a quasi-sovereign interest in such an action. To begin, the Act itself authorizes the Attorney General to act in the public interest, distinguishing enforcement actions brought by the Attorney General from private suits. *Exxon Mobil Corp.*, 2022 WL 16901988, at *9. Specifically, the court noted that the District can do three things under the CPPA that private citizens cannot: 1) the District can seek civil penalties, 2) the District may seek an injunction without proving damages, and 3) the District is not subject to a statute of limitations. As the Court reasoned:

> These distinctions make clear that the District has its own "pecuniary interest in this lawsuit" distinct from the private financial interests of individual citizens. *District of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1047 (D.C. Cir. 1986). Put another way, the District seeks redress of its own injuries and may recover for violations of the Act apart from any recovery individual citizens seek. *Cf. id.* (finding no "pecuniary interest" where state government sued but damages were awarded to private individuals).

*Id.* Under this analysis, the court found that the District was seeking redress of its *own* injuries under the CPPA, apart from any recoveries that individual plaintiffs might seek or obtain.[2] The same analysis requires remand here as well.

---

[2] Although private rights of action can result in awards of treble damages DC Code § 28-3905(k)(1), the same is not true in enforcement actions brought by the District, *id.* § 28-3909. In an attempt to shoehorn diversity jurisdiction where it does not lie, Defendants wrongly claim that the District could recover treble damages in restitution for District consumers. This is plainly incorrect, as the CPPA only authorizes OAG to obtain *economic* damages. This is yet another different between the rights afforded to District residents in seeking redress under the CPPA versus the District's interests in an enforcement action, further establishing the District is the real party in interest here.

The Team and Mr. Snyder argue that the District seeking civil penalties and injunctive relief does not provide the District with sufficient interest in the case because "no injunction . . . [could] redress past misstatements," and penalties only provide the District a mere "pecuniary or beneficial interest" in the case. Notice of Removal ¶ 17. Both arguments fail. *First*, the District *does* seek an injunction to redress Defendants' misstatements and omissions, insofar as it may seek injunctive relief requiring the disclosure of information that Defendants promised to disclose to the public but has so far withheld. *Second*, as described by the court in *Exxon*, the D.C. Circuit has indicated that a pecuniary interest distinct from a private individual may be sufficient to demonstrate that the District is a real party in interest with a quasi-sovereign interest in an enforcement matter. *District of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1047 (D.C. Cir. 1986) (finding no "pecuniary interest" sufficient to defeat diversity where the District was nominal plaintiff, but damages were only awarded to private citizens).

Unsurprisingly, Mr. Snyder and the Team have not cited a single case where a state has been found to be only a nominal party when, as here, it was enforcing its consumer protection laws.   For example, both *Louisiana v. Union Oil Co. of California,* 458 F.3d 364 (5th Cir. 2006) and *State of Maine v. Data General Corp.*, 697 F. Supp. 23 (D. Me. 1988) held that the state was the real party in interest and resulted in remand. In *Union Oil Co.*, the court held that Louisiana *was* the real party in interest, defeating diversity jurisdiction, and even noted the state's "moral obligation" to ensure that funds recovered under the suit were used appropriately under the controlling law. 458 F.3d at 367. In *Data General Corp.*, the court found that the state had a quasi-sovereign interest "in a marketplace free of unlawful discrimination" even though the case in question only benefitted a single individual. 697 F. Supp. at 25. Both are instructive here, as the

11

District has an obligation and quasi-sovereign interest in protecting the integrity of the District's marketplace.

Other cases relied upon by the Team and Mr. Snyder are clearly distinguishable and have no bearing on this matter. *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458 (1980) addressed whether business trustees (not a state) were the real party in interest and could bring a case in federal court based upon diversity jurisdiction. Likewise, *Georgia v. Pennsylvania Railroad*, 324 U.S. 439, 450 (1945), was a case seeking to invoke the original jurisdiction of the Supreme Court of the United States, and traditional diversity jurisdiction considerations relevant to this motion were not at issue there. Nevertheless, that case actually *affirmed* that a state has a quasi-sovereign, *parens patriae* interest in pursuing consumer protection and antitrust claims on behalf of its citizens. *Id.* Finally, *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017) is also easily distinguishable from the current case. There, the court found that the state did not have *parens patriae* standing because the state had no additional interest in the action outside of the complete relief that individual plaintiffs could obtain in a private suit. *Id.* Unlike *Harris*, which was seeking to challenge an out-of-state law, this consumer protection enforcement action seeks to enforce District law, and as discussed above, the District has numerous standalone pecuniary and policy interests in ensuring Defendants' compliance with that law.

As Defendants conceded, the District's participation in litigation rarely creates diversity jurisdiction. The narrow exceptions to this rule do not exist here. The District brought this enforcement action in Superior Court to enforce District law, maintain integrity in the District marketplace, seek civil penalties, and obtain restitution and other relief for consumers injured by Defendants' deceptive practices. The District is the real party in interest, defeating diversity jurisdiction, and this matter should be remanded to the Superior Court.

**II.      The Court Should Award the District its Fees and Costs.**

      The District also requests that Defendants pay the costs, including attorneys' fees, incurred as a result of the improper removal of this case, pursuant to 28 U.S.C. § 1447(c). District courts have broad discretion to award fees related to removal, particularly where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140-141 (2005). "The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Id.* Under this standard, "if non-removability is obvious or contrary to well-settled law, courts regularly impose costs and expenses incurred as a result of removal." *Stein*, 813 F. Supp. 2d at 74; *See also, Ballard v. D.C.*, 813 F. Supp. 2d 34 (D.D.C. 2011).

      The Team and Mr. Snyder concede that diversity jurisdiction does not generally exist between a state and a citizen of another state. Notice of Removal ¶ 11. Their flimsy and unsupported arguments that the District is only a nominal party ignore the unanimous precedent finding that states are the real party in interest in consumer protection enforcement actions such as this one.

      In sum, Defendants have failed to provide any objectively reasonable basis for removal. But by removing this matter, they have caused the District to incur unnecessary costs and fees in litigating this Motion, and they have ensured themselves a lengthy delay of this matter before it can return to its proper forum in the Superior Court of the District of Columbia. In addition to the harm to the public fisc, Defendants' tactics will delay accountability for their misrepresentations and illegal conduct. An award of costs and fees is necessary to deter such gamesmanship and compensate the District for the harm Defendants have caused.

**CONCLUSION**

The Team and Mr. Snyder have not met their burden of proof to establish subject matter jurisdiction in this consumer protection enforcement matter. The District therefore respectfully requests the remand of this action to the Superior Court of the District of Columbia, and an award of its costs and fees.

Dated: December 30, 2022

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

JENNIFER C. JONES
Deputy Attorney General
Public Advocacy Division

ALICIA M. LENDON
Chief, Civil Rights & Elder Justice Section

*/s/ Andrew Mendrala*
ANDREW MENDRALA (#1009841)
Assistant Attorney General

JAMES ANTHONY TOWNS (#433435)
Assistant Attorney General

Office of the Attorney General
400 Sixth Street, N.W., 10th Floor
Washington, D.C. 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DISTRICT OF COLUMBIA**<br><br>     P**LAINTIFF**,<br><br>     v.<br><br>**PRO-FOOTBALL INC. d/b/a WASHINGTON COMMANDERS, DANIEL SNYDER, THE NATIONAL FOOTBALL LEAGUE, and ROGER GOODELL,**<br><br>     D**EFENDANTS**. | **Case No.: 1:22-cv-03813 (TSC)** |

**[PROPOSED] ORDER REMANDING CASE TO THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

Upon consideration of Plaintiff District of Columbia's Motion to Remand to the Superior Court of the District of Columbia for Lack of Subject Matter Jurisdiction, the opposition hereto, and the entire record herein, it is this _____ day of _____, 2023, hereby

ORDERED that the Motion to Remand to the Superior Court of the District of Columbia for Lack of Subject Matter Jurisdiction is GRANTED; and it is further

ORDERED that this case is remanded to the Superior Court of the District of Columbia; and it is further

ORDERED that the Clerk of the court shall mail a certified copy of this order to the Clerk of the Superior Court of the District of Columbia; and it is further

ORDERED that the Plaintiff shall submit a copy of the costs and attorneys' fees incurred in filing its motion within 45 days of this order for review by the Court; upon the approval of Plaintiff's costs and fees, Defendants shall pay Plaintiff the reasonable costs and fees incurred as a result of removal within 30 days.

15

SO ORDERED.

DATED: _____, 2023

_____
DISTRICT JUDGE TANYA S. CHUTKAN
United States District Court for the District
of Columbia

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of December 2022, a true and correct copy of the foregoing was filed with the Clerk of Court and served electronically via CM/ECF upon all counsel of record.

/s/ Andrew Mendrala
ANDREW MENDRALA
Assistant Attorney General

17