# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA,

               Plaintiff,

      v.

PRO-FOOTBALL, INC., DANIEL SNYDER,
THE NATIONAL FOOTBALL LEAGUE,
AND ROGER GOODELL,

               Defendants.

Case No. 22-cv-3813-TSC

Judge Tanya S. Chutkan

**PRO-FOOTBALL, INC. AND DANIEL SNYDER'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................2

ARGUMENT ..............................................................................................................................3

    I.    This Court has diversity jurisdiction over this action because the real
parties in interest are completely diverse from Defendants.................................................3

        A.    The Complaint does not allege that the District has an interest in this
action separate from the interests of the allegedly injured consumers. ..................5

                1.    The District's conclusory invocations of generalized
interests underlying the CPPA do not establish that it is
pursuing a quasi-sovereign interest in this case. ....................................... 5

                2.    The District does not show that this action will redress
any injuries to the District itself. ............................................................. 10

        B.    The District fails to show that the injuries alleged in the Complaint
affect a substantial portion of its population.........................................................12

    II.    Even if the Court were to conclude that it lacks jurisdiction, there is no
basis to award costs or fees...............................................................................................14

CONCLUSION..........................................................................................................................17

# TABLE OF AUTHORITIES

*Page(s)*

### CASES

\* *Alfred L. Snapp & Son, Inc.* v. *Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982)............................................................................5, 12

*AU Optronics Corp.* v. *South Carolina*,
   699 F.3d 385 (4th Cir. 2012) .........................................................................9

*Dist. of Columbia ex rel. Am. Combustion, Inc.* v. *Transamerica Ins. Co.*,
  797 F.2d 1041 (D.C. Cir. 1986) ...................................................................16

*In re Baldwin–United Corp.*,
  770 F.2d 328 (2d Cir. 1985).............................................................................4

*CPI Crude, Inc.* v. *U.S. Dep't of Energy*,
  77 B.R. 320 (D.D.C. 1987) ...........................................................................11

\* *Dep't of Fair Emp. & Hous.* v. *Lucent Techs., Inc.*,
  642 F.3d 728 (9th Cir. 2011) ...............................................................6, 7, 11

\* *Dist. of Columbia* v. *JTH Tax LLC*,
  2023 WL 130736 (D.D.C. Jan. 9, 2023) ................................................ *passim*

*Dist. of Columbia* v. *Exxon Mobil Corp.*,
  2022 WL 16901988 (D.D.C. Nov. 12, 2022) ........................................ *passim*

*Mississippi ex rel. Hood* v. *AU Optronics Corp.*,
  571 U.S. 161 (2014)...........................................................................6, 8, 9, 12

*Knop* v. *Mackall*,
  645 F.3d 381 (D.C. Cir. 2011) ......................................................................15

*Koster* v. *Harris*,
  847 F.3d 646 (9th Cir. 2017) ........................................................................11

*Louisiana* v. *Am. Bankers Ins. Co. of Fla.*,
  2012 WL 13001048 (E.D. La. Aug. 21, 2012) ...............................................12

*Louisiana* v. *Union Oil Co. of Cal.*,
  458 F.3d 364 (5th Cir. 2006) ...........................................................................4

*Maine* v. *Data Gen. Corp.*,
  697 F. Supp. 23 (D. Me. 1988) ........................................................................7

*Martin* v. *Franklin Cap. Corp.*,
  546 U.S. 132 (2005) ...............................................................................................15

*Missouri, K. & T. Ry. Co. of Kansas* v. *Hickman*,
  183 U.S. 53 (1901) ...................................................................................................7

*Nat'l Consumers League* v. *Gen. Mills, Inc.*,
  680 F. Supp. 2d 132 (D.D.C. 2010) .......................................................................15

*Navarro Sav. Ass'n* v. *Lee*,
  446 U.S. 458 (1980) ..................................................................................................4

*Nevada* v. *Bank of America Corp.*,
  672 F.3d 661 (9th Cir. 2012) ............................................................................6, 9, 10

* *Ohio* v. *GMAC Mortg.*, LLC.,
  760 F. Supp. 2d 741 (N.D. Ohio 2011) ............................................................. *passim*

*People by Underwood* v. *LaRose Indus. LLC*,
  386 F. Supp. 3d 214 (N.D.N.Y. 2019) ....................................................................9

## STATUTES

28 U.S.C. § 1332 ...........................................................................................................3

28 U.S.C. § 1447 ....................................................................................................14, 15

D.C. Code § 28-3905 ...............................................................................................5, 9, 11

## OTHER AUTHORITIES

14C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3739 .....................6

Rob Brunner, *Dear Dan Snyder: I Quit*, Sept. 8, 2022, *available at*
  https://www.washingtonian.com/2022/09/08/washington-commanders-lose-
  longtime-fan .........................................................................................................14

Press Release, *AG Racine Sues Washington Commanders, Dan Snyder, NFL &
  NFL Commissioner Goodell for Deceiving DC Fans for Financial Gain*, Nov.
  10, 2022, *available at* https://oag.dc.gov/release/ag-racine-sues-washington-
  commanders-dan-snyder .........................................................................................5

## PRELIMINARY STATEMENT

In this unprecedented consumer protection action, the Attorney General of the District of Columbia claims that Defendants committed unlawful business practices through "misrepresentations, omissions and ambiguities of material fact" *not* about any goods or services Defendants marketed to the public—such as tickets to professional football games or league or Washington Commanders merchandise—but about allegations related to the Team's workplace environment.  Specifically, the Complaint asserts that, in the wake of publicly reported allegations of a hostile workplace environment at the Team, certain D.C.-based Commanders fans chose to purchase tickets and merchandise in reliance on purportedly false public statements (or "ambiguities") made by Defendants about those allegations and a privileged independent investigation into them conducted by a well-respected former federal prosecutor.  This theory rests on sheer speculation and stretches the notion of a consumer protection action beyond recognition. But even on its own terms, the District purports only to advance the interests of that small group of individuals who allegedly considered Defendants' statements about the workplace allegations and related investigation before deciding to purchase football tickets or merchandise.  Under well-established diversity jurisdiction principles, those consumers are the real parties in interest, and it is thus their citizenship that matters to the jurisdictional inquiry.  Because all of those individuals are citizens of the District of Columbia—but none of the Defendants is—this Court has diversity jurisdiction over this case.

The District nonetheless seeks to avoid this Court's jurisdiction and requests remand to D.C. Superior Court on the ground that its mere presence as the named Plaintiff destroys diversity. The District claims in its remand motion to be pursuing its own quasi-sovereign interest in this case—as it must to establish that it is the real party in interest—but does not and cannot identify any such interest tied to the allegations in the Complaint that are independent of the interests of

the allegedly misled subset of D.C. consumers.  And neither the Complaint nor the District's motion to remand makes any real effort to demonstrate that any such group of consumers represents a substantial segment of the population.  In the end, the District essentially asks the Court to adopt a categorical rule that it is always the real party in interest whenever the Attorney General invokes his statutory enforcement authority under the consumer protection laws.  That rule finds no support in established law, and the Court should decline to adopt it.

Finally, this Court should swiftly reject the District's claim that it should receive attorney's fees and costs associated with its motion to remand.  While the District may disagree with Defendants' legal position, there is certainly no binding precedent foreclosing removal of this unprecedented consumer protection action.  Indeed, another court in this district rejected an identical request by the Attorney General earlier this month, finding that similar arguments to those made in support of removal here (though in a far weaker case for federal jurisdiction) were "objectively reasonable."  Even if this Court were to conclude that it lacks jurisdiction here, it should likewise deny the District's request for fees.

## BACKGROUND

On November 10, 2022, the District filed this action in D.C. Superior Court asserting that Defendants violated the District of Columbia Consumer Protection Procedures Act ("CPPA") through public statements addressing allegations reported in the *Washington Post* of "sexual misconduct" and a "hostile work environment" at the Team, as well as a privileged independent investigation into those allegations.  *See* ECF No. 13, ("Compl.") ¶ 2.  Most of the Complaint merely rehashes at great length the workplace allegations, *see id.* ¶¶ 35-61, as well as criticism of the privileged investigation conducted by attorney Beth Wilkinson, the independence of that investigation, and how the results of the investigation were reported to the public, *id.* ¶¶ 70-134.

In the few places the Complaint attempts to identify a purported consumer protection basis for its suit, it alleges that the reports of alleged workplace misconduct caused "many District fans to consider withdrawing financial support" from the Team, *id.* ¶ 35, because those fans allegedly "became concerned that by financially supporting the Team they were funding a toxic workplace," *id.* ¶ 64. According to the Complaint, Defendants then made misleading statements about the alleged misconduct and ensuing investigation "[i]n order to sell expensive tickets and merchandise and maintain the Team as a profitable part of the League." *Id.* ¶ 1; *see also id.* ¶¶ 2, 135. And allegedly as a result of those statements, certain District "consumers continued to purchase tickets and merchandise with the understanding that a thorough, unbiased investigation was underway." *Id.* ¶ 138. Based on these allegations, the Complaint seeks a laundry list of relief under the CPPA, including disgorgement, restitution, damages, injunctive relief, and civil penalties. *Id.* at 37.

On December 23, 2022, the Team and Mr. Snyder filed a timely Notice of Removal in this Court based on federal diversity jurisdiction. ECF No. 1 ("Notice of Removal"). The NFL and Mr. Goodell consented to removal. ECF No. 7. On December 30, 2022, the District filed its Motion to Remand this action back to D.C. Superior Court. ECF No. 16 ("Motion").

## ARGUMENT

## I.     THIS COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION BECAUSE THE REAL PARTIES IN INTEREST ARE COMPLETELY DIVERSE FROM DEFENDANTS.

Federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The District does not dispute that the amount-in-controversy requirement is satisfied and that no Defendant is a citizen of the District of

Columbia. *See* Notice of Removal ¶¶ 10, 20-27. Its only argument is that there is no diversity because the District of Columbia is not a "citizen" of any state.[1] Motion at 6-12.

As the District recognizes, however, the Court must base its jurisdictional inquiry not on the "nominal or formal parties" to the litigation, but rather "only upon the citizenship of real parties to the controversy." *See Navarro Sav. Ass'n* v. *Lee*, 446 U.S. 458, 461 (1980). That principle applies in full force when a state files suit: "[I]f the State is a nominal party with no real interest in the dispute, its citizenship may be disregarded." *Louisiana* v. *Union Oil Co. of Cal.*, 458 F.3d 364, 366 (5th Cir. 2006). And courts hold that a state "is not the real party in interest" when it "merely asserts the personal claims of its citizens." *In re Baldwin–United Corp.*, 770 F.2d 328, 341 (2d Cir. 1985); *see Ohio* v. *GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 751 (N.D. Ohio 2011) (holding in state consumer protection action that "specific Ohio homeowners" who transacted with mortgage company were "the real-parties-in-interest," not the state).

Here, as explained in the Notice of Removal (¶¶ 12-19), the District's action seeks only to advance the interests of a small and discrete group of D.C. residents. In particular, the Complaint alleges that "many District fans . . . consider[ed] withdrawing financial support" from the Team after learning of the allegations in the *Washington Post* about a hostile workplace environment at the Team. Compl. ¶ 35. But after considering certain statements made by Defendants about those allegations and a privileged independent investigation into them, the District claims, those "consumers continued to purchase tickets and merchandise with the understanding that a thorough,

---

[1] The District also made the baseless suggestion that Defendants' removal "may . . . be procedurally deficient" for failure to submit a prompt notice of removal to the D.C. Superior Court. Motion at 6 n.1. That suggestion is wrong. As reflected on the Superior Court's docket, the Team and Mr. Snyder filed a certificate of removal notice on December 23, 2022, the same day they filed the Notice. *See* Notice of Removal to U.S. District Court, *District of Columbia* v. *Pro-Football Inc. et. al.*, No. 2022-CAB-005171 (D.C. Sup. Ct. Dec. 23, 2022).

unbiased investigation was underway." *Id.* ¶ 138.  That subset of D.C. consumers, who allegedly received and relied on those "statements [that] were false and calculated to mislead consumers so they would continue to support the Team financially," *id.* ¶ 2, are the real parties in interest in this action, not the District itself.  Although the CPPA expressly empowers those allegedly deceived consumers to bring their own claims (including "on behalf of . . . the general public"), *see* D.C. Code § 28-3905(k)(1)(A)–(B), the Attorney General chose to do so in their place.  Indeed, then-Attorney General Karl Racine publicly proclaimed as much on the day he filed the Complaint: "That's what this lawsuit is about: standing up for DC residents who were deceived and misled." Press Release, *AG Racine Sues Washington Commanders, Dan Snyder, NFL & NFL Commissioner Goodell for Deceiving DC Fans for Financial Gain*, Nov. 10, 2022, *available at* https://oag.dc.gov/release/ag-racine-sues-washington-commanders-dan-snyder.

Now, in asking this Court to remand this case, the District attempts to show that *it* is the real party in interest.  But to do so, it must show that it has alleged (1) a "quasi-sovereign interest" in the litigation "apart from the interests of particular private parties," and (2) that the conduct addressed by the action affects a "sufficiently substantial segment of [the state's] population." *Dist. of Columbia* v. *JTH Tax LLC*, 2023 WL 130736, at *5 (D.D.C. Jan. 9, 2023) (quoting *Alfred L. Snapp & Son, Inc.* v. *Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982)).  The District fails to make either showing.

###### A.    The Complaint does not allege that the District has an interest in this action separate from the interests of the allegedly injured consumers.

####### 1.    The District's conclusory invocations of generalized interests underlying the CPPA do not establish that it is pursuing a quasi-sovereign interest in this case.

The District's attempts to show that it has a quasi-sovereign interest in this litigation largely amount to sweeping, boilerplate incantations of the *general* interests that the CPPA authorizes the

Attorney General to pursue.  For instance, in its Motion (but not the Complaint), the District broadly characterizes this lawsuit as an "enforcement action to establish a fair marketplace, prevent and redress consumer injury, and seek civil penalties and other equitable relief under . . . consumer protection laws," and claims that it "brought this government enforcement action . . . to protect [its citizens] from fraudulent and deceptive practices, to ensure the integrity of the District's consumer protection laws, and to ensure a fair marketplace for all District consumers."  Motion at 6, 8.  And it asserts that "concerns about the economic well-being of District residents and securing an honest marketplace were driving factors in the District bringing this enforcement action."  *Id.* at 9.

These conclusory assertions of government interests underlying the CPPA *generally* do not establish that the District is acting in a quasi-sovereign capacity *in this case*.  As the Supreme Court has recognized, in certain diversity jurisdiction cases (including those "involving a State"), courts must "look behind the pleadings to ensure that parties are not improperly . . . destroying diversity jurisdiction."  *Mississippi ex rel. Hood* v. *AU Optronics Corp.*, 571 U.S. 161, 174 (2014).  This Court's jurisdictional determination thus turns on "the essential nature and effect of the proceeding," not simply the labels the District uses in its Motion to Remand.  *See Nevada* v. *Bank of America Corp.*, 672 F.3d 661, 670 (9th Cir. 2012) (quoting *Dep't of Fair Emp. & Hous.* v. *Lucent Techs., Inc.*, 642 F.3d 728, 740 (9th Cir. 2011)); *see also* 14C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3739 (Rev. 4th ed.) ("Whether an action should be remanded to state court must be resolved by the district court with reference to the complaint, the notice of removal, and the state-court record at the time the notice of removal was filed.").

Nowhere does the District even attempt to show how its actual claims as pleaded in the Complaint will "establish" a "fair" or "honest marketplace"—indeed, the words "marketplace" or "economic well-being" do not appear a single time in the Complaint, nor does the Complaint

otherwise allege any broader systemic impact of the alleged conduct.  Those generalized interests thus do not reflect the "essential nature and effect" of *this* case, which by the Complaint's terms advances the interests of only a small subset of "District fans" of the Team.

Were it enough to merely tout these kinds of generalized government interests, untethered to the actual allegations of the Complaint, in order to establish a quasi-sovereign interest defeating diversity jurisdiction, the District could easily do so in every case it brings.  But courts have recognized that this would be inconsistent with established jurisdictional principles.  "[T]he Supreme Court has provided that although 'the [s]tate has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws,' these 'general governmental interest[s]' will not satisfy the real party to the controversy requirement for the purposes of defeating diversity because 'if that were so the state would be a party in interest in all litigation.'"  *Lucent Techs.*, 642 F.3d at 737 (quoting *Mo., Kan. & Tex. Ry. Co.* v. *Hickman*, 183 U.S. 53, 60 (1901)); *see Maine* v. *Data Gen. Corp.*, 697 F. Supp. 23, 25 (D. Me. 1988) ("A state's interest may also be nominal if it has no interest other than the general welfare of its citizens and compliance with its laws.").

That is certainly true of the supposed interests in "ensur[ing] the integrity of the District's consumer protection laws" and "securing an honest marketplace" that the District recites in its Motion:  The same conclusory interests could be claimed in every CPPA action, irrespective of the particular allegations or claims at issue.  In fact, lest there be any doubt, the interests the District recites in its Motion are lifted virtually verbatim from another remand motion it recently filed in a different case involving entirely different allegations (against a tax preparation company).  *See* Motion to Remand at 6, ECF No. 10, *Dist. of Columbia* v. *JTH Tax LLC*, No. 22-cv-3165 (filed Oct. 26, 2022) ("*JTH* Motion") ("The District brought this action to establish a fair marketplace,

prevent and redress consumer injury, and seek civil penalties under its consumer protection laws."); *id.* at 8 ("Here too, concerns about the economic well-being of District residents and securing an honest marketplace were driving factors in the District filing this suit.").  While the *JTH* court agreed that the District's suit in that instance was "attempting to vindicate" a "quasi-sovereign interest in the economic well-being of its residents," 2023 WL 130736, at *3, the claims there involved a deceptive overcharging scheme for tax preparation services affecting more than 12,000 D.C. consumers—conduct that plainly implicates an "honest marketplace" and the "economic well-being" of D.C. residents (particularly "low-income consumers" the District alleged were disproportionately impacted, *JTH Motion* at 4).  The District cannot establish a quasi-sovereign interest here by simply copy-and-pasting the same boilerplate interests as animating *this* case, which alleges purported misstatements not about the goods or services Defendants actually marketed to consumers but about internal employment-related matters involving hostile-workplace allegations.

What the District really seeks is a categorical rule that it is *by definition* pursuing a quasi-sovereign interest whenever the Attorney General decides to bring a CPPA action.  *See* Motion at 4 ("[W]ell-settled law hold[s] that diversity jurisdiction cannot lie in government enforcement actions.").  But the District cites no case supporting such a rule, and other courts have expressly rejected it, explaining that "[t]he fact that the State chose to act on behalf of a group of residents under [a consumer protection statute] does not, by itself, automatically turn the action into an action that benefits all" state consumers, rendering the state the real party in interest.  *GMAC Mortg.*, 760 F. Supp. 2d at 750; *see AU Optronics*, 571 U.S. at 174 (recognizing courts' obligation to "look behind the pleadings to ensure that parties are not improperly . . . destroying diversity jurisdiction" in "cases involving a State or state official").  Instead, as in any other context, courts

determine whether a state is merely a nominal party in a consumer protection suit by engaging in the full real-party-in-interest analysis.  *See, e.g.*, *JTH*, 2023 WL 130736, at *2-5; *Dist. of Columbia* v. *Exxon Mobil Corp.*, 2022 WL 16901988, at *9-10 (D.D.C. Nov. 12, 2022), *appeal pending*, No. 22-7163 (D.C. Cir.); *Nevada*, 672 F.3d at 670-72; *People by Underwood* v. *LaRose Indus. LLC*, 386 F. Supp. 3d 214, 217-20 (N.D.N.Y. 2019); *GMAC Mortg.*, 760 F. Supp. 2d at 744-51.

The cases cited by the District (Motion at 8-9) not only fail to support its claimed quasi-sovereign interests here, but confirm why the District has no such interest in this case.  The District relies on *AU Optronics Corp.* v. *South Carolina*, but the state in that case sued to enforce two statutes under which "individual enforcement" was "not authorized," meaning that *only* the state could have an interest in enforcing them.  699 F.3d 385, 393 (4th Cir. 2012).  The CPPA, by contrast, expressly authorizes the allegedly deceived consumers described in the Complaint to bring suit, including "on behalf of . . . the general public" (though no such consumer has done so). D.C. Code § 28-3905(k)(1)(A)–(B).  The District next cites *Exxon Mobil*, in which the District brought suit under the CPPA against energy companies for purported misrepresentations that allegedly led to "rising sea levels, destruction of property, and other consequences of climate change."  2022 WL 16901988, at *10.  Here, the District does not allege that Defendants' conduct caused anything remotely close to this kind of widespread physical damage allegedly affecting entire populations (as well as the District's own property).

Finally, in *Nevada* v. *Bank of America Corp.*, the state alleged that the defendant bank misled consumers about certain mortgage modification and foreclosure processes.  672 F.3d at 664-65, 670.  The Ninth Circuit held that the state had a "strong and distinct interest" in ensuring the integrity of its mortgage market and overall economy for *all* Nevada residents, based on the fact that "[f]oreclosures work a widespread and devastating injury not only to those borrowers who

are defrauded, but also on other Nevada residents and the Nevada economy as a whole."  *Id*. at 670-71.  As the court reasoned, the state had not only "sued to protect the *hundreds of thousands of homeowners* in the state allegedly deceived by" the defendant bank, but also to protect *all* consumers who were "affected by the impact of Bank of America's alleged frauds on Nevada's economy" during the greater "foreclosure crisis" at the time.  *Id.* (emphasis added).  As with *Exxon Mobil*, if anything, the scale of the impact of the alleged conduct in *Nevada* simply confirms why this action, brought solely on behalf of an alleged group of "District fans" who "continued to purchase tickets and merchandise with the understanding that a thorough, unbiased investigation was underway," Compl. ¶¶ 35, 138, does not advance any recognized quasi-sovereign interest of the District.

### 2.     The District does not show that this action will redress any injuries to the District itself.

The District likewise fails to defeat diversity jurisdiction through its contention (Motion at 10-11) that it is pursuing its own interests through this litigation.  The District asserts that it "seek[s] redress of its *own* injuries under the CPPA."  *Id*. at 10 (emphasis in original).  But nowhere in the Complaint *or* the Motion does the District ever identify any such injury that the District itself has purportedly suffered as a result of the alleged conduct.  Again on this ground, the District argues that the analysis in *Exxon Mobil* "requires remand," *id*., but in that case the court relied on the District's allegations of injury to "the District itself" from "'existential' environmental injuries—such as rising temperatures and sea levels—which cause 'damage [to] critical infrastructure and property,' 'heat waves,' 'flooding,' and other 'extreme weather.'"  2022 WL 16901988, at *1, 10 (quoting the complaint).  Nothing like that is alleged here, and the District points to no conceivable injury that *it* has suffered as a result of the alleged misstatements.

The District also claims that the various forms of relief demanded in the Complaint give it a "pecuniary interest" sufficient to make it the real party in interest here.  Motion at 10-11.  But courts recognize that states do not become real parties in interest merely because of the relief they demand in a complaint where "complete relief would be available to the [affected individuals] themselves, were they to file a complaint on their own behalf," *Koster* v. *Harris*, 847 F.3d 646, 651-52 (9th Cir. 2017), or even where "*most* of the[] forms of . . . relief" sought "could be obtained by the [private party] aggrieved," *Lucent Techs.*, 642 F.3d at 739 (emphasis added).  That is undoubtedly true here, as any affected consumers bringing a private right of action on behalf of themselves and the "general public" could seek equivalent forms of relief to those sought by the District.  *See* D.C. Code § 28-3905(k)(2) (granting consumers right to seek "[t]reble damages" or "$1,500 per violation," "[r]easonable attorney's fees," "[p]unitive damages," "[a]n injunction," and "[a]ny other relief which the court determines proper").[2]

To be sure, the Attorney General's authority to seek punitive relief takes the form of civil penalties as opposed to the punitive damages the statute allows consumers to pursue, but that distinction does not give the District a pecuniary interest sufficient to make it the real party in interest.  *Cf. CPI Crude, Inc.* v. *U.S. Dep't of Energy*, 77 B.R. 320, 323 (D.D.C. 1987) (explaining that although "the government regulates private conduct by establishing penalties for certain violations of rules," that "does not mean" that it is "merely seeking to protect some 'pecuniary interest' in the monies represented by the penalties" when bringing an enforcement action); *see also Tull* v. *United States*, 481 U.S. 412, 422 (1987) ("A civil penalty was a type of remedy at common law . . . intended to punish culpable individuals, as opposed to those intended simply to

---

[2]The Team and Mr. Snyder do not concede that any of these remedies would actually be available in this action.

-11-

extract compensation or restore the status quo.").  The real party in interest is the party "possess[ing] the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery."  *Louisiana* v. *Am. Bankers Ins. Co. of Fla.*, 2012 WL 13001048, at *1 (E.D. La. Aug. 21, 2012).  Under the allegations in this case, the purportedly deceived consumers alleged to have been misled into "continu[ing] to support the Team financially," Compl. ¶ 2, are the ones with the right to be enforced, and the civil penalties demand does not alter that conclusion. *See GMAC Mortg.*, 760 F. Supp. 2d at 749 (finding that "Ohio citizens under threat of foreclosure by [a mortgage company] and not the State of Ohio generally" were the real parties in interest notwithstanding the state's potential "collection of civil penalties").  Allowing the District to deem itself the real party in interest in any case merely by listing civil penalties in its Prayer for Relief would simply be another way of creating the unfounded categorical rule the District seeks here, and conflict with the Supreme Court's instruction to "look behind the pleadings to ensure that parties are not improperly . . . destroying diversity jurisdiction."  *AU Optronics*, 571 U.S. at 174.

**B.    The District fails to show that the injuries alleged in the Complaint affect a substantial portion of its population.**

As explained in the Notice of Removal, the Complaint does not allege facts demonstrating that a significant "proportion of the [District's] population" was "adversely affected by the challenged behavior."  *Snapp*, 458 U.S. at 607.  Tellingly, the District does not meaningfully dispute this contention or attempt to make this showing in its Motion, aside from a bald assertion that "Defendants' activity in the District has impacted a substantial segment of the District population."  Motion at 10.

The District's silence on this point is unsurprising, given that the Complaint at best alleges only that a small "group of individual residents" were impacted by Defendants' alleged misstatements.  *Snapp*, 458 U.S. at 607.  Because the Complaint's allegations are premised on fans

of the Team who made purchases in reliance on Defendants' statements starting in July 2020, the universe of potentially aggrieved individuals includes only *certain* of those District consumers who purchased tickets and merchandise from the Team between July 2020 and November 2022, when this Complaint was filed.  Compl. ¶ 35.  In particular, Defendants' alleged misstatements are not alleged to have impacted all D.C. consumers; nor all D.C. fans of the Commanders; nor all D.C. Commanders fans who (like Defendants) were concerned by the July 2020 allegations of a hostile workplace environment at the Team; but only those D.C. Commanders fans who "consider[ed] withdrawing financial support" as a result of those allegations but nonetheless "continued to purchase tickets and merchandise with the understanding that a thorough, unbiased investigation was underway."  *Id.* ¶¶ 35, 138.

The Complaint offers no basis to conclude that this "yet again smaller subset" of a "smaller subset" of an "identifiable group" of District consumers represents a "substantial segment" of the District population.  *See GMAC Mortg.*, 760 F. Supp. 2d at 748-49.  In fact, the only attempt in the Complaint to identify *any* such consumers consists largely of screenshots of four tweets from Twitter users.  Compl. ¶¶ 78, 85.  Suffice to say that, based on their profiles, it is unclear at best whether these Twitter users are District residents who purchased the Team's products as alleged in the Complaint.  Exhibit 1 to Littleton Declaration (screenshots of Twitter profiles for users "@_BenBecker," whose profile identifies his location as "The seventh planet"; "@naveed_a_khan19," located in "Silicon Valley, California"; "@Big_John_1906," located in "Miami, FL"; and "@DCSportsDre," located in "At Peace").  The Complaint also points to a single op-ed penned by a "fan" who listed the allegations about the Team's workplace environment as one of three factors leading him to "cancel [his] fandom" after "the final indignity" of the Team changing its name.  *See* Compl. ¶ 143.  But nothing in the op-ed suggests that the author has *ever*

purchased tickets or any Team merchandise—much less that he did so after July 2020 based on Defendants' alleged misstatements—so there is likewise no indication that he is a member of the subset (of a subset) of D.C. consumers whose interests this lawsuit purports to advance.[3]

These threadbare and unsubstantiated allegations again stand in stark contrast to recent decisions finding that the District *had* shown that its claims affected a substantial segment of the population, such as the more than 12,000 D.C. consumers allegedly deceived by a tax preparation services scheme, *JTH*, 2023 WL 130736, at *1, or indeed the entire population of the District potentially affected by the "consequences of climate change," *Exxon Mobil*, 2022 WL 16901988, at *10.  Given that the District has made no showing that its lawsuit furthers the interest of a substantial segment of the population, the Court should reject its overreaching claim that the District is the real party in interest.

## II.   EVEN IF THE COURT WERE TO CONCLUDE THAT IT LACKS JURISDICTION, THERE IS NO BASIS TO AWARD COSTS OR FEES.

Again lifting a page largely verbatim from its recent playbook in remand motions, the District contends that it should receive attorney's fees and costs pursuant to 28 U.S.C. § 1447(c) because Defendants' removal purportedly was an improper act of "gamesmanship."  *Compare* Motion at 4, 13, *with JTH* Motion, *supra*, at 3-4 ("[Liberty Tax's] specious arguments that diversity jurisdiction exists . . . entitle the District to attorney's fees and costs. . . . Such consequences are necessary to deter Liberty Tax's gamesmanship."); *id.* at 9-10 ("[Liberty Tax's] flimsy and

---

[3]   *See* Rob Brunner, *Dear Dan Snyder: I Quit*, Sept. 8, 2022, *available at* https://www.washingtonian.com/2022/09/08/washington-commanders-lose-longtime-fan. Finally, the Complaint points to two anonymized advocacy websites and unhappy fans at FedEx Field in Landover, Maryland, but makes no effort to allege that any of those "fans" purportedly chose to buy football tickets and merchandise only because of Defendants' alleged misstatements about the alleged workplace environment at the Commanders and the privileged independent investigation into those allegations.  Compl. ¶¶ 144, 146-47.

unsupported arguments . . . ignore the extensive precedent finding that states are the real party in interest in consumer protection actions such as this one."). The *JTH* court rejected the District's request for fees in an opinion issued earlier this month, *see* 2023 WL 130736, at *6, and this Court should do the same with the District's identical request here.

"Section 1447(c) authorizes courts to award fees and costs," but "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin* v. *Franklin Cap. Corp.*, 546 U.S. 132, 133, 141 (2005). As the *JTH* court recognized, the "threshold for objective reasonableness is rather low:" the defendant's grounds for removal must "contain 'at least some logical and precedential force,'" and not be "contrary to well-settled law." 2023 WL 130736, at *6 (quoting *Knop* v. *Mackall*, 645 F.3d 381, 383-84 (D.C. Cir. 2011)).

As demonstrated above, Defendants' removal of this action has more than an objectively reasonable basis, because this Court *has* diversity jurisdiction in this case. But even if the Court were to disagree, Defendants' arguments easily clear this low bar. Although a number of courts have remanded consumer-protection actions filed by states, other courts have held that a state is *not* the real party in interest for consumer protection claims. *See, e.g.*, *GMAC Mortg.*, 760 F. Supp. 2d at 751 (holding "that the real-parties-in-interest are the specific Ohio homeowners" who engaged in certain transactions with a mortgage company, not the State of Ohio). Indeed, given the unprecedented and overreaching nature of the District's theory here, even the District cannot point to *any* cases that squarely find a state to be more than a nominal party in a case like this one, much less any "precisely on-point case law from the D.C. Circuit" that undercuts Defendants' arguments. *JTH*, 2023 WL 130736, at *6; *see also Nat'l Consumers League* v. *Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 141 (D.D.C. 2010) (declining to award attorney's fees and costs in CPPA context because "no D.C. Circuit law foreclos[ed] [defendant's] arguments" despite defendant

advancing a contention "contrary to other decisions in this district").  In fact, the only D.C. Circuit case the District directly cites held (albeit in a different context) that the District *was* merely a nominal party.  *See Dist. of Columbia ex rel. Am. Combustion, Inc.* v. *Transamerica Ins. Co.*, 797 F.2d 1041, 1047 (D.C. Cir. 1986).[4]

In short, even if this Court ultimately decides to remand this case, it should conclude that Defendants at a minimum "had an objectively reasonable basis for removal such that they should not be responsible for Plaintiff's attorney's fees and costs."  *JTH*, 2023 WL 130736, at *6.

---

[4] Although the *JTH* court noted that "an equivalent legal question was still pending" in *Exxon Mobil* at the time the defendant there filed its notice of removal, 2023 WL 130736, at *6, the *Exxon Mobil* court's remand decision does not undermine the objective reasonableness of Defendants' position here.  A single, non-binding district court decision does not render a basis for removal unreasonable, and in any event *Exxon Mobil* is currently on appeal to the D.C. Circuit (and has been administratively stayed by the court of appeals).  *See* Order, No. 22-7163 (D.C. Cir. Dec. 23, 2022).  More fundamentally, as explained above at Section I.2.B, *Exxon Mobil*—a case involving allegations of population-wide injuries and harm caused by global climate change—is easily distinguishable from the District's claims here, and in fact confirms that the real parties in interest in this litigation are the small subset of D.C. fans of the Commanders who supposedly relied on the alleged misstatements in deciding to purchase football tickets or merchandise.

## CONCLUSION

For the foregoing reasons, the Court should deny the District's Motion to Remand and its

request for attorney's fees and costs.

Dated: January 31, 2023

Respectfully submitted,

*/s/ Stuart G. Nash*
STUART G. NASH [444058]
JOHN L. BROWNLEE [452665]
TIMOTHY J. TAYLOR [1005503]
DAVID L. HALLER [1026467]
HOLLAND & KNIGHT LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 469-5158
(202) 955-5564
stuart.nash@hklaw.com
john.brownlee@hklaw.com
timothy.taylor@hklaw.com
david.haller@hklaw.com

*/s/ Karen Patton Seymour*
KAREN PATTON SEYMOUR (*admitted pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, N.Y. 10004
(212) 558-4000
seymourk@sullcrom.com

*/s/ Judson O. Littleton*
JUDSON O. LITTLETON [1027310]
KAMIL R. SHIELDS [1674318]
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 1700
Washington, D.C. 20006
(202) 956-7500
littletonj@sullcrom.com
shieldska@sullcrom.com

*Attorneys for Pro-Football, Inc. and Daniel Snyder*

**CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 5.4(d), I hereby certify that, on January 31, 2023, I caused the foregoing Memorandum in Opposition to the District of Columbia's Motion to Remand to be electronically filed via the Court's CM/ECF system, which effected service of the document upon all counsel of record.

_/s/ Judson O. Littleton_____
Judson O. Littleton
*Attorney for Pro-Football, Inc. and Daniel Snyder*