**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DISTRICT OF COLUMBIA**<br><br>        **PLAINTIFF,**<br><br>v.<br><br>**PRO-FOOTBALL, INC., DANIEL SNYDER, THE NATIONAL FOOTBALL LEAGUE, AND ROGER GOODELL,**<br><br>        **DEFENDANTS.** | Case No.: 1:22-cv-03813 (TSC) |

**REPLY IN SUPPORT OF THE DISTRICT'S MOTION TO REMAND**

## I.    INTRODUCTION

The District brought this government enforcement action in the Superior Court of the District of Columbia to challenge the deceptive practices of Pro-Football, Inc. (d/b/a the Commanders), Daniel Snyder, the National Football League (NFL), and Roger Goodell (collectively, Defendants), all of whom deceived District consumers about an investigation into sexual misconduct and a hostile work environment—conduct that Mr. Snyder himself participated in and an environment that he created. Defendants' misrepresentations were designed to secure continued fan support of organizations whose behind-the-scenes conduct contradicted their publicly-espoused values.

Defendants argue that removal based on diversity jurisdiction here was appropriate because the real plaintiffs in interest are only those District consumers who relied upon Defendants' deceptive conduct, and not the District itself. *See generally* ECF No. 30 (Opp'n). That argument fails. This case belongs in Superior Court because this Court does not have subject matter jurisdiction over this action. The District's participation in litigation rarely creates diversity

jurisdiction, and the narrow exceptions to the rule that Defendants proffer do not exist in this case. The District is the real party in interest because it has a "quasi-sovereign interest" in this enforcement matter "apart from the interests of particular private parties," and Defendants' behavior affected "a sufficiently substantial segment" of the District's population. *District of Columbia v. JTH Tax LLC*, No. 22-cv-03165 (CKK), 2023 WL 130736 (D.D.C. Jan. 9, 2023) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,* 458 U.S. 592, 607 (1982)).

*First*, as discussed in the District's Motion to Remand (the Motion), the District has strong regulatory and deterrence objectives in prosecuting this enforcement action well beyond the ability to recoup money for individual consumers. *See* ECF No. 16. This litigation will ensure the District's laws are followed and other merchants do not mimic Defendants' example by deceiving consumers into ongoing financial support with sham "independent investigations" when allegations of serious misconduct are raised. The District pursues these objectives by seeking relief only available to the District in an enforcement action, such as civil penalties and injunctive relief (without needing to prove damages), in addition to the restitution and economic damages available to private plaintiffs. *See* D.C. Code § 28-3909.

*Second*, the conduct at issue in this litigation affects a "sufficiently substantial segment of [the District's] population." *JTH Tax*, 2023 WL 130736, at *3. Contrary to Defendants' arguments, there is no numerical threshold that the District must meet. The proper inquiry is whether "both the direct and indirect effects of an alleged injury . . . impact a broader portion of the state's population and the general welfare of the public." *Id.* at *5.[1] Here, the indirect benefits of barring Defendants' actions "accrue[] to the population at large." *Id.* (quoting *Illinois v. SDS West Corp.*,

---

[1] Without the benefit of discovery, the number of District consumers who patronized Defendants' businesses during the relevant time period is currently unknown, but because of the Commanders' long history in the District and its relentless marketing to District consumers, that number is likely quite large. *See* Compl. ¶¶ 26-34; 141-148.

640 F. Supp. 2d 1047, 1051 (C.D. Ill. 2009)). Defendants' arguments against remand fail, and the lack of a legitimate basis for removing this matter entitle the District to attorney's fees incurred in defending against this removal.

## II. THE DISTRICT IS THE REAL PARTY IN INTEREST IN THIS CONSUMER PROTECTION ENFORCEMENT ACTION.

### A. The District Has a Quasi-Sovereign Interest In This Consumer Protection Enforcement Action, Making It The Real Party In Interest.

The District brought this government enforcement action under the District's Consumer Protection Procedures Act (CPPA), a statute that provides the Attorney General unique powers and remedies to address deceptive and illegal trade practices. *See* D.C. Code § 28-3901(b). The District is the real party in interest in litigation when it has a substantial stake in the outcome, or a quasi-sovereign interest, defeating diversity jurisdiction and making removal improper. *See State of W.Va. v. Morgan Stanley & Co. Inc.*, 747 F. Supp. 332, 338 (S.D.W. Va. 1990) (granting remand where state is real party in interest because money at issue was payable to the state). The District's quasi-sovereign interest in bringing a consumer protection enforcement action under the CPPA was recently confirmed, again, in *JTH Tax*, 2023 WL 130736. That case reinforces that remand here is appropriate.

Like the case at bar, *JTH Tax* is a CPPA enforcement action brought by the District against a merchant that does not "reside" in the District. In finding a lack of diversity jurisdiction, the court began by noting that a state has a quasi-sovereign interest that includes an "interest in the continuing prosperity of its economy . . . [including] protecting the economic well-being of their citizens who were defrauded." *Id.* at *3 (cleaned up). The court noted that, where an Attorney General is empowered to bring actions in the public interest (such as under the CPPA), courts have found that this responsibility *itself* provides the state a quasi-sovereign interest. *Id.* (quoting *West*

*Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 748 F. Supp. 2d 580, 595 (S.D. W. Va. 2010)); *see also District of Columbia v. Exxon Mobil Corp.*, No. 20-1932 (TJK), -- F. Supp. 3d ---, 2022 WL 16901988, at *9 (D.D.C. Nov. 12, 2022) (noting that the CPPA "itself makes clear that the District has a 'quasi-sovereign interest' in prosecuting consumer protection violations.").

By bringing this case, the District is protecting the economic well-being of its citizens by ensuring a fair marketplace and redressing consumer injuries. Specifically, it seeks to deter merchants from publicly touting investigations to whitewash their reputations in the marketplace, while secretly undermining the independence and integrity of such investigations behind the scenes.[2] Accordingly, it is incumbent upon the District and other regulators to ensure that, when companies tout those investigations as reason for consumers to begin or resume doing business with them, those claims are honest and complete. The CPPA makes clear that the Attorney General is responsible for protecting the integrity of the District's marketplace when there is evidence of consumer deception. That is the case here. This benefit accrues to all District consumers, regardless of whether they are fans of the Commanders and the NFL.

Defendants proffer three general arguments as to why the District's interests in this case do not meet the "quasi-sovereign" test: (1) the District's interests are not specifically tied to the facts of this case; (2) the District failed to establish what harm it suffered by Defendants' conduct; and (3) the District's uniquely available relief is not sufficient to overcome the first two propositions. All of these arguments fail.

---

[2] Indeed, merchants have incentive to deceive the public about the credibility of their internal investigations, because "[m]any of the benefits of doing an internal investigation are contingent upon the real and perceived integrity of the investigation itself." In-House Counsel's Guide to Conducting Internal Investigations at 9, available at https://www.omm.com/omm_distribution/white_collar_defense/guide%20_to_conducting_internal_investigations_j an_2020.pdf.

Although Defendants suggest that the District's stated interests are too "generalized" to provide a quasi-sovereign interest in this case, the authority they cite suggests otherwise. They heavily rely on an argument set out in *Dept of Fair Empl. & Hous. v. Lucent Techs, Inc*., 642 F.3d 728 (9th Cir. 2011) in stating that "'general governmental interest[s]' will not satisfy the real party to the controversy requirement for the purposes of defeating diversity." Opp'n at 7 (quoting *Lucent Techs.*, 642 F.3d at 737). But *Lucent* is not dispositive, because it was not a consumer protection enforcement action, and it bears no resemblance to the case at bar. There, the California Department of Fair Employment and Housing filed an anti-discrimination suit on behalf of *one* disabled employee. In that case, the court noted that the statute under which the state agency sued contained a specific provision stating that "the person claiming to be aggrieved shall be the real party in interest," and that, unlike here, the forms of equitable relief sought could have been obtained by the individual. *Id*. at 739. And unlike the District here, the state did not seek civil penalties in *Lucent Techs*.

Defendants also cite *State of Maine v. Data Gen. Corp.*, 697 F. Supp. 23 (D. Me. 1988) to support their argument that "the general welfare of its citizens and compliance with its laws" is insufficient for a state to establish it is the real party in interest. Opp'n at 7. Defendants fail to disclose, however, that in *Data Gen. Corp.*, which also involved an anti-discrimination claim on behalf of a *single* individual, the court actually granted the motion to remand the case for the same reason the Motion should be granted here. 697 F. Supp. at 25. "A state's interest in maintaining an honest marketplace is a quasi-sovereign interest, even where the state's action will also benefit individuals. This reasoning suggests that the state's interest in a marketplace free of unlawful discrimination is similarly a quasi-sovereign interest, even if the state's action directly benefits individual victims of discrimination." *Id.* (internal citations omitted).

5

Defendants cite only one consumer protection enforcement case in which the court denied remand: *Ohio v. GMAC Mortg., LLC*, 760 F. Supp. 2d 741 (N.D. Ohio 2011). *See* Opp'n, *passim*. But the case at bar is easily distinguishable. In *GMAC*, the Ohio consumer protection statute at issue narrowly regulated "the practices used in making or seeking to make sales to consumers, and not the terms of completed sales with consumers." *Id.* at 748 (quotation omitted). The challenged conduct was relevant only to completed sales, *i.e.*, it related only to specific post-transaction conduct in foreclosure proceedings, which was outside the scope of the Ohio consumer protection statute entirely. *Id.* Therefore, the court concluded that the relief the state sought could only benefit those individuals with "a unique completed mortgage sale relationship with" the defendant bank, and no one else. *Id.* at 749. That is a decidedly inapposite landscape to the District's claims here. Here, the District is attempting to ensure a fair marketplace free from Defendants' and other bad actors' deceptive public relations practices in attempting to sell their products to District consumers; or as the *GMAC* court put it when characterizing facts in which the state *did* have a quasi-sovereign interest in a consumer protection enforcement action, the District is "seeking to limit questionable practices in 'selling' [Defendants'] product to consumers—and the relief sought would prevent a questionable business practice that may affect some larger segment of potential [District] consumers." *Id.*

The cases Defendants cite do not undermine the conclusion that the District's stated interests are sufficiently tied to the facts of this case to defeat diversity jurisdiction. Consistent with the court's most recent observation in *JTH Tax*, the District has a quasi-sovereign interest in this consumer protection enforcement action. 2023 WL 130736, at *4 & n.3 (collecting cases and

noting that "the weight of authority from various Circuits find[s] that states have quasi-sovereign interests in the enforcement of consumer protection laws.").[3]

Next, Defendants argue that for the District to be a real party in interest, it must allege an actual injury to the District itself, such as a physical injury to real property that it owns. *See* Opp'n at 10-12. Case law does not require the District to plead such an injury. This is not a requirement under the quasi-sovereign interest analysis, nor is it one for the District to bring a case under the CPPA. Incredibly, Defendants grossly misconstrue the District's words, suggesting that "[t]he District asserts that it 'seek[s] redress of its *own* injuries under the CPPA,'" and faulting the District for purportedly never articulating a specific injury. Opp'n at 10. This is not what the Motion states. Instead, the Motion characterizes the rationale of the court in *Exxon Mobil*, after quoting that court's explanation that the District had "its own 'pecuniary interest in this lawsuit' distinct from the private financial interests of individual citizens." Mot. at 10, *quoting Exxon Mobil*, 2022 WL 16901988 at *9. The District's Motion thereafter states that "[u]nder this analysis, the court found that the District was seeking redress of its *own* injuries under the CPPA, apart from any recoveries that individual plaintiffs might seek or obtain." Mot. at 10. But as discussed above, even if such an injury were required, the District would meet that threshold because the injury the District has suffered here is an injury to the integrity of the District's economic marketplace, and the civil penalties and other relief obtained inure to the benefit of all District consumers, establishing the District's quasi-sovereign interest in the matter.

---

[3] Defendants take issue with the fact that the District made similar arguments in favor of remand here as it did in *JTH Tax*. *See* Opp'n at 7-8 (suggesting that the District was "simply copy-and-pasting the same boilerplate" arguments); *id.* at 14 (noting similarity in argument and lamenting the District's "recent playbook in remand motions"). The District's arguments are similar in both cases simply because identical issues were presented in both matters, the District's reasons for bringing both cases were similar, and remand is proper in both cases.

Finally, Defendants assert that the District's entitlement to civil penalties and other relief that differs from private parties is insufficient to warrant remand and does not establish a harm unique to the District. Opp'n at 11-12. But the court in *JTH Tax* establishes that by seeking remedies not available to a private plaintiff under the CPPA, the District is pursuing a quasi-sovereign interest. 2023 WL 130736, at *3. As in *JTH Tax*, the remedies that the District seeks here differ from those that a private plaintiff could seek under the CPPA. The District seeks civil penalties, which are not available to individuals, in addition to disgorgement, restitution, and economic damages. Compl. at 37. Further, while private plaintiffs can request injunctive relief similar to what the District seeks here, unlike private plaintiffs, the District does not need to prove damages to obtain it, significantly lowering the burden and expanding the scope of any potential injunction. *See* D.C. Code § 28-3909(a).

Defendants reject this straightforward reasoning by ignoring the analysis of *JTH Tax* on the issue entirely, seeking instead to analogize the remedies the District seeks to remedies that *are* available to private plaintiffs. Opp'n at 10-12. But the analogies are meritless. The differences between the relief available to the respective plaintiffs reflect a substantive policy judgment by the D.C. Council that the District often does and will have a quasi-sovereign interest in enforcement actions brought under the CPPA. For example, as referenced above, although injunctive relief is available to a private plaintiff, they must establish an actual injury to be entitled to such relief. *See Hancock v. Urban Outfitters*, 830 F.3d 511, 514 (D.C. Cir. 2016) (remanding to dismiss a CPPA complaint where private plaintiffs failed to allege an injury); *see also Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 185 (D.C. 2021) (holding that statutory revisions modified Article III standing requirements under the CPPA only "with respect to suits brought by public interest organizations"). Not so for the District. *See* D.C. Code § 28–3909(a) ("In any action under

this section, the Attorney General shall not be required to prove damages"). By not requiring the District to prove damages, the D.C. Council empowered the Attorney General to vindicate a broader sweep of unlawful conduct, and to receive greater remedies to protect a fair marketplace for District consumers.

The Supreme Court has held that a state is only a real party in interest "when the relief sought is that which inures to it alone." *Missouri, Kan. & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 59 (1901). In *Hickman*, like *Lucent*, 642 F.3d 728, the case was "not an action to recover any money for the state" and "[i]ts results will not inure to the benefit of the state as a state in any degree." 183 U.S at 59. [4] On that basis, the *Hickman* court allowed removal. But here, where the District seeks civil penalties that go *solely and directly to the District*, as well as injunctive relief to prevent fraud in the marketplace, the rationale justifying removal that was present in those cases does not exist here. *See, e.g.*, *New York by James v. Amazon.com, Inc.,* 550 F. Supp. 3d 122, 131 (S.D.N.Y. 2021) (*Hickman* rationale does not apply, and removal is not appropriate, where state seeks relief that only the state could seek); *cf. Lucent*, 642 F.3d at 739 (removal appropriate where no relief sought by the state inured for its benefit alone).

Throughout their Opposition, Defendants seek to miscast this case as being brought by the District in a representative capacity on behalf of a small group of Commanders fans that live in the District. But the District is not litigating as an agent of aggrieved fans. Instead, the District is seeking "civil penalties paid to the District as well as injunctive relief that would ensure an honest marketplace, further the economic well-being of its residents, and protect residents from deceptive business practices." *JTH Tax*, 2023 WL 130736, at *4. As the court in *JTH Tax* noted, "[t]he fact that private parties may also benefit from the District's lawsuit does not negate the District's

---

[4] The same is also true for *Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017), on which Defendants also rely for this proposition. *See* Opp'n at 11.

substantial interest in this case. This principle has been recognized nationwide." *Id.* (collecting cases).

In conclusion, the District has established its quasi-sovereign interests in this matter because it is attempting to prevent fraud in the marketplace, and it is seeking civil penalties and injunctive relief uniquely available to it.

### B. A Substantial Portion of the District's Population was Affected by Defendants' Deception.

The injuries at issue in this matter affect "a sufficiently substantial segment of [the District's] population." *Snapp*, 458 U.S. at 607. As *Snapp* confirmed, the quantum of directly affected consumers need not be a large number, and "the raw number of individuals directly involved does not determine whether the [s]tate has alleged injury to a sufficiently substantial segment of its population." *People by Vacco v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 148 (S.D.N.Y. 1995) (quotation omitted); *see Snapp*, 458 U.S. at 607 (there are no "definitive limits on the proportion of the population of the State that must be adversely affected by the challenged behavior."). Many courts applying this rule have found that the substantial segment prong has been satisfied with exceedingly low numbers of directly affected consumers. *See In re Suwinski*, 509 B.R. 568, 574 (Bankr. S.D. Ohio 2013) ("The numerosity requirement for *parens patriae* standing has been satisfied in cases involving as few as 64, 51, and six consumers."). As mentioned above, the court in *Data General Corp.* found the state was the real party in interest with only *one* impacted resident. 697 F. Supp. 23. Remand here does not require a showing of a large number of affected consumers, nor a specific articulation of a number at all.

Nevertheless, Defendants attempt to justify removal by vaguely suggesting that some large number of identifiable consumers must be directly impacted, and then attempting to limit this case

to only a "yet again smaller subset of a smaller subset of an identifiable group" of Commanders fans. *See* Opp'n at 13 (internal quotations omitted). Neither is true.

Defendants cite *Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) to support their argument that "the scale of the impact of the alleged conduct" must be widespread to constitute a quasi-sovereign interest. But in *Bank of Am. Corp.*, as discussed in the District's Motion, the court found the state to be the real party in interest not based on its claim of widespread impact, but instead because the state brought "suit pursuant to its statutory authority under [its consumer protection statute] because of its interest in protecting the integrity of mortgage loan servicing" and preventing consumer fraud in loan modifications and foreclosures. 672 F.3d 661, 670-71 (9th Cir. 2012). The court also looked to the relief sought by the state, noting that the state sought enforcement of a Consent Judgment, civil penalties, and injunctive relief. *Id*. at 672. Although the court noted the widespread impact of foreclosures in the state, such dicta does not transform that observation into a requirement for finding a quasi-sovereign interest.

Defendants also claim this case only impacts a small number of "fans of the Team who made purchases in reliance on Defendants' statements." Opp'n at 12-13. This suggestion—though as stated, is not even relevant—still fundamentally misconstrues the scope of the challenged conduct, the relief the District seeks, and the prevailing authority on this issue for at least three reasons. *First*, Defendants' Opposition entirely ignores the NFL's presence in this case. The District's complaint alleges that the Commanders *and* the NFL made statements with a tendency to mislead District residents in an attempt to secure continued consumer support for *both* the Team and the League. *See* Compl. 17, 149-155.

*Second*, the sufficiently substantial segment analysis does not end with only those consumers directly affected by Defendants' deception. "[C]ourts must consider both the direct and

indirect effects of an alleged injury when determining if a substantial segment of the population has been injured." *JTH Tax*, 2023 WL 130736, at *5 (citing *Snapp*, 458 U.S. at 607). Where the District is protecting the integrity of the marketplace, the indirect effects of the conduct at issue in this litigation affect all District consumers. *See id.* (finding "sufficiently substantial segment of D.C.'s population affected" by the indirect effects of a defendant's conduct when "[a]llowing Defendant to continue deceiving District residents would undermine the integrity of D.C. law, weaken the marketplace, and enable other residents to be harmed in the future.").[5]

   *Third*, despite Defendants' assertions to the contrary, *see* Opp'n at 5, 13-14, even if the District were only seeking restitution for a discrete group of directly impacted District consumers, unlike common law fraud claims, the District is not required to prove reliance to establish liability under the CPPA. *See* D.C. Code § 28-3904 ("It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, *whether or not* any consumer is in fact misled, deceived, or damaged thereby") (emphasis added); *see also McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016) (Under the CPPA, "[a]ll that is required is 'an affirmative or implied misrepresentation' that 'a reasonable consumer' would deem misleading" also noting that to prove common law fraud, a plaintiff must show that an "action is taken in reliance upon the representation") (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013)). Thus, even under Defendants' flawed assertion that the District is only bringing this case in a representative capacity for directly affected consumers, the number of impacted District

---

[5] The court in *GMAC*, often cited favorably by Defendants, also noted that the sufficiently substantial segment prong is met "[a]s a rule of thumb, . . . if the state would likely attempt to address the injury through its sovereign lawmaking powers, if able." *GMAC Mortg.*, 760 F. Supp. 2d at 750. Although the D.C. Council has not yet addressed Defendants' behavior here through legislation, Congress has, through the Accountability for Workplace Misconduct Act, H.R. 8146, 117th Cong. (2022), and the Professional Images Protection Act, H.R. 8145, 117th Cong. (2022).

consumers for whom the District could recover would be far larger than Defendants' artificial limitations suggest.

Taken together, the segment of the District's population that has been directly and indirectly affected by Defendants' conduct is sufficiently substantial such that the District is a real party in interest in this matter. Thus, the case should be remanded for lack of subject matter jurisdiction.

### III.   THE DISTRICT IS ENTITLED TO ATTORNEY FEES.

Defendants' attempt to remove this action to federal court is a frivolous delay tactic, and the District is entitled to fees and costs pursuant to 28 U.S.C. § 1447. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005) ("Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff."). The question of whether the District is the real party in interest in a state consumer enforcement action is well-settled. Not only has the District cited extensive case law from both this District Court and federal courts throughout the country in which state enforcement actions have been remanded, but *JTH Tax* summarized the overwhelming state of authority at the time Defendants removed, noting that "the weight of authority from various Circuits [has found] that states have quasi-sovereign interests in the enforcement of consumer protection laws." *JTH Tax*, 2023 WL 130736, at *4. In support of that observation, the court cited eight cases, *id.* at n.3, including one that itself noted "widespread legal support" for that position and cited thirteen more cases rejecting the arguments Defendants attempt here. *See Washington v. CLA Est. Servs., Inc.*, No. C18-480 MJP, 2018 WL 2057903, at *1 & n.2-3 (W.D. Wash. May 3, 2018). Defendants' justification for removal also contradicts binding case law, including Supreme Court precedent making clear that states are the real party in interest in enforcement actions (absent rare exceptions) and such actions are thereby generally not

removable. *See Mississippi ex rel. Hood v. AU Optronic Corp.*, 471 U.S. 161, 176 (2014). Therefore, Defendants' attempts to twist dicta and inapposite case law into an argument in support of removal is objectively unreasonable.

Defendants suggest that "the *JTH* court rejected the District's request for fees in an opinion issued earlier this month . . . and this Court should do the same with the District's identical request here." Opp'n at 15. But there is a material difference in this case that was previewed in *JTH Tax:* "[A]t the time of removal, an equivalent legal question was still pending before a district court in this Circuit and there was no precisely on-point case law from the D.C. Circuit." 2023 WL 130736 at *12. The same is not true for Defendants here; they had the benefit of the court's opinion in *Exxon Mobil*, including the substantial precedent it collected and favorably cited finding that removal of a consumer protection enforcement action under the CPPA is improper. 2022 WL 16901988 at *9-10. Ignoring the sound reasoning and overwhelming authority cited in this Circuit by *Exxon Mobil* (and later reiterated in *JTH Tax*) by pressing forward in this instance, while relying on a single, easily distinguishable case from Ohio, is therefore unreasonable.

Despite extensive authority that forecloses removal, Defendants claim that their effort to remove this case was still objectively reasonable because there is no binding D.C. Circuit case law directly on point. But it is not surprising that no such authority exists, because orders for remand are generally not reviewable on appeal. *See* 28 U.S.C. § 1447(d). The court may award fees so long as "non-removability is obvious or contrary to well-settled law." *Stein v. Am. Exp. Travel Related Servs.*, 813 F. Supp. 2d 69, 74 (D.D.C. 2011). Therefore, Defendants (and this Court) should not look *solely* to D.C. Circuit case law in determining whether Defendants' removal was unreasonable, especially when there are numerous, consistent orders from this District on the issue,

all of which is directly "in line with the weight of authority from various Circuits." *JTH Tax*, 2023 WL 130736, at *4.

Because Defendants' removal contradicts extensive precedent confirming that the District is the real party in interest in this case and therefore falls far short of establishing diversity jurisdiction, the Court should award the District attorney's fees and costs.

## III.    CONCLUSION

Defendants have not met their burden of proof to establish subject matter jurisdiction in this consumer protection enforcement action. The District therefore respectfully requests the remand of this action to the Superior Court of the District of Columbia, and an award of its costs and fees.

Dated: February 7, 2023              Respectfully submitted,


BRIAN L. SCHWALB
Attorney General for the District of Columbia

JENNIFER C. JONES
Deputy Attorney General
Public Advocacy Division

ALICIA M. LENDON
Chief, Civil Rights & Elder Justice Section

*/s/ Andrew Mendrala*
ANDREW MENDRALA (#1009841)
JAMES ANTHONY TOWNS (#433435)
Assistant Attorney General
Office of the Attorney General
400 Sixth Street, N.W., 10th Floor
Washington, D.C. 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this 7th day of February 2023, a true and correct copy of the foregoing was filed with the Clerk of Court and served electronically via CM/ECF upon all counsel of record.

                                     */s/ Andrew Mendrala*
                                     ANDREW MENDRALA
                                     Assistant Attorney General